IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
[CIVIL]

CASE NO.: 22-cv-20525-BLOOM/Otazo-Reyes

ELENA SVISTINA,

      Plaintiff/Counter-Defendant,

vs.

MARK ELBADRAMANY,
*et al*,

      Defendant/Counter-Plaintiff.

_____/

## DEFENDANT MARK ELBADRAMANY'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT[1] AND COUNTERCLAIMS

Defendant, Mark Elbadramany ("Mr. Elbadramany" or "Defendant"), by and through undersigned counsel, for its Answer and Affirmative Defenses to Plaintiff's Complaint in the above-captioned matter (hereinafter referred to as the "Complaint") (DE 1), hereby admits, denies, and avers as follows:

### General Allegations Applicable to all Counts

1.     Defendant denies in part and admits in part the allegations of paragraph 1. Defendant denies that the amount in controversy meets the jurisdictional amount as is required at the time the Complaint was filed on February 22, 2022. Defendant denies that Plaintiff is a citizen of California, as she has since admitted that she is a citizen of Russia. Defendant admits that the parties are diverse.

---

[1] The Complaint does not follow a numerical sequence of numbers, sometimes skipping numbers or repeating number and sub-paragraphs. For convenience, the Answer's paragraphs match and follow the sequence of the Complaint.

b. Defendant denies the allegations contained in paragraph 1(b) of the Complaint and demands strict proof thereof.

c. Defendant admits the allegations in paragraph 1(c) of the Complaint.

c. Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1(c) of the Complaint relating to co-Defendant TDR Master, and therefore denies same.

2. Defendant admits the allegations of paragraph 2 of the Complaint for venue only.

3. Defendant asserts that the allegation in paragraph 3 of the Complaint contains a description of the pleader's legal theory without any factual allegations to which a response admitting or denying the allegation is required.

4. Defendant admits in part and denies in part the allegations of paragraph 4. Defendant admits that he owned a condominium at 15901 Collins Avenue, unit 2006, Sunny Isles Beach, Florida. Defendant denies the remaining allegations in paragraph 4.

5. Defendant admits the allegations of paragraph 5.

6. Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 6 of the Complaint, and therefore denies same and demands strict proof thereof.

7. Defendant denies in part and admits in part the allegations contained in paragraph 7 of the Complaint. Defendant admits Plaintiff contacted Defendant via Couchsurfing requesting Defendant help her with a free place to stay. Defendant denies that he offered accommodation at his condominium. Defendant admits that following

Plaintiffs request, she was offered a free place to stay for June 18 or 19 to June 20 or 21, 2021.

**Count I**
**(Sexual Battery – Elbadramany)[2]**

8.      Defendant realleges and incorporates herein by this reference his responses to paragraphs 1 through 7 above as if fully set forth herein.

9.      Defendant denies in part and admits in part the allegations contained in paragraph 9 of the Complaint. Defendant denies that Plaintiff arrived from California on the evening of June 18, 2021, and demands strict proof thereof. Defendant denies that Plaintiff ever arrived at his condominium, and demands strict proof thereof. Defendant admits that they met on June 18, 2021. Defendant admits that he escorted her to a cabana located at Trump Towers Condominium.

10.     Defendant denies in part and admits in part the allegations of paragraph 10. Defendant admits that a massage table was out, and a Murphy bed was raised. Defendant denies that any massage oils were set up in place, and demands strict proof thereof.

11.     Defendant denies the allegations contained in paragraph 11 of the Complaint and demands strict proof thereof.

12.     Defendant denies the allegations contained in paragraph 12 of the Complaint and demands strict proof thereof.

---

[2] "Sexual battery" is a term of art, and Plaintiff has not alleged any facts constituting sexual battery as a cause of action in the Complaint. That term is governed by Fla. Stat. § 794.011 which at sub-section (1)(h) defines "sexual battery" as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." At no point in the recitation of the alleged incident does Plaintiff describe any penetration or union with Plaintiff's sexual organ whatsoever. Hence, Count 1 fails as a matter of law.

13.     Defendant denies the allegations contained in paragraph 13 of the Complaint and demands strict proof thereof.

14.     Defendant denies the allegations contained in paragraph 14 of the Complaint and demands strict proof thereof.

15.     Defendant denies the allegations contained in paragraph 15 of the Complaint and demands strict proof thereof.

16.     Defendant denies the allegations contained in paragraph 16 of the Complaint and demands strict proof thereof.

17.     Defendant denies the allegations contained in paragraph 17 of the Complaint and demands strict proof thereof.

18.     Defendant denies the allegations contained in paragraph 18 of the Complaint and demands strict proof thereof.

19.     Defendant denies the allegations contained in paragraph 19 of the Complaint and demands strict proof thereof.

20.     Defendant denies in part and admits in part the allegations of paragraph 20 of the Complaint. Defendant denies that Plaintiff reported the true facts of what happened. Defendant admits that he was arrested and charged by the State of Florida based on the false, malicious, and fictitious facts as alleged by Plaintiff. There is no pending charge against Mr. Elbadramany as the State dropped the only charge it sought to charge, by nolle prose after reviewing evidence depicting the truth of the matter and showing Plaintiffs false, malicious, and fictitious allegations to the police and the State Attorney.

21.     Defendant denies the allegations contained in paragraph 21 of the Complaint and demands strict proof thereof.

22.     Defendant denies the allegations contained in paragraph 22 of the Complaint and demands strict proof thereof.

## Count II
## (Negligent Innkeeper duty – Elbadramany)

17.     Defendant realleges and incorporates herein by this reference his responses to paragraphs 1 through 7 above as if fully set forth herein.

18.     Defendant denies the allegations contained in paragraph 18 of the Complaint and demands strict proof thereof.

19.     Defendant admits the allegations of paragraph 19 of the Complaint.

23.     Defendant denies the allegations of paragraph 23 of the Complaint, and demands strict proof thereof.

24.     Defendant denies the allegations contained in paragraph 24 of the Complaint, and demands strict proof thereof.

25.     Defendant denies the allegations contained in paragraph 25 of the Complaint, and demands strict proof thereof.

26.     Defendant denies the allegations contained in paragraph 26 of the Complaint, and demands strict proof thereof.

27.     Defendant denies the allegations contained in paragraph 27 of the Complaint, and demands strict proof thereof.

    a. Defendant denies the allegations contained in paragraph 27 (a) of the Complaint, and demands strict proof thereof.

    b. Defendant denies the allegations contained in paragraph 27(b) of the Complaint, and demands strict proof thereof.

c. Defendant denies the allegations contained in paragraph 27(c) of the Complaint, and demands strict proof thereof.

d. Defendant denies the allegations contained in paragraph 27(d) of the Complaint, and demands strict proof thereof.

28. Defendant denies the allegations contained in paragraph 28 of the Complaint, and demands strict proof thereof.

29. Defendant denies the allegations contained in paragraph 29 of the Complaint, and demands strict proof thereof.

## Count III
### (Negligent Misrepresentation – Elbadramany)

30. Defendant realleges and incorporates herein by this reference his responses to paragraphs 1 through 7 above as if fully set forth herein.

31. Defendant denies the allegations contained in paragraph 31 of the Complaint, and demands strict proof thereof.

e. Defendant denies the allegations contained in paragraph 31(e) of the Complaint, and demands strict proof thereof.

f. Defendant denies the allegations contained in paragraph 31(f) of the Complaint, and demands strict proof thereof.

g. Defendant denies the allegations contained in paragraph 31(g) of the Complaint, and demands strict proof thereof.

h. Defendant denies the allegations contained in paragraph 31(h) of the Complaint, and demands strict proof thereof.

32. Defendant denies the allegations contained in paragraph 32 of the Complaint, and demands strict proof thereof.

33.     Defendant denies the allegations contained in paragraph 33 of the Complaint, and demands strict proof thereof.

34.     Defendant denies the allegations contained in paragraph 34 of the Complaint, and demands strict proof thereof.

35.     Defendant denies the allegations contained in paragraph 35 of the Complaint, and demands strict proof thereof.

36.     Defendant denies the allegations contained in paragraph 36 of the Complaint, and demands strict proof thereof.

**Count IV**
**(False imprisonment – Elbadramany)**

37.     Defendant realleges and incorporates herein by this reference his responses to paragraphs 1 through 7 above as if fully set forth herein.

38.     Defendant denies in part and admits in part the allegations of paragraph 38. Defendant admits that Mr. Elbadramany escorted Plaintiff to his cabana on June 18, 2021. Defendant denies the remaining allegations in paragraph 38 of the Complaint, and demands strict proof thereof.

39.     Defendant denies in part and admits in part the allegations of paragraph 39. Defendant admits that a massage table was out, and a Murphy bed was raised. Defendant denies that any massage oils were set up in place, and demands strict proof thereof.

40.     Defendant denies the allegations contained in paragraph 40 of the Complaint, and demands strict proof thereof.

41.     Defendant denies the allegations contained in paragraph 41 of the Complaint, and demands strict proof thereof.

42. Defendant denies the allegations contained in paragraph 42 of the Complaint, and demands strict proof thereof.

43. Defendant denies the allegations contained in paragraph 43 of the Complaint, and demands strict proof thereof.

44. Defendant denies the allegations contained in paragraph 44 of the Complaint, and demands strict proof thereof.

45. Defendant denies the allegations contained in paragraph 45 of the Complaint, and demands strict proof thereof.

46. Defendant denies the allegations contained in paragraph 46 of the Complaint, and demands strict proof thereof.

47. Defendant denies the allegations contained in paragraph 47 of the Complaint, and demands strict proof thereof.

48. Defendant denies the allegations contained in paragraph 48 of the Complaint, and demands strict proof thereof.

49. Defendant denies the allegations contained in paragraph 49 of the Complaint, and demands strict proof thereof.

50. Defendant denies the allegations contained in paragraph 50 of the Complaint, and demands strict proof thereof.

51. Defendant denies the allegations contained in paragraph 51 of the Complaint, and demands strict proof thereof.

52. Defendant denies the allegations contained in paragraph 52 of the Complaint, and demands strict proof thereof.

53.   Defendant denies the allegations contained in paragraph 53 of the Complaint, and demands strict proof thereof.

### Count V
### (Invasion of Privacy – Elbadramany)

54.   Defendant realleges and incorporates herein by this reference his responses to paragraphs 1 through 7 above as if fully set forth herein.

55.   Defendant denies the allegations contained in paragraph 55 of the Complaint, and demands strict proof thereof.

56.   Defendant denies in part and admits in part the allegations of paragraph 56. Defendant admits that Mr. Elbadramany escorted Plaintiff to a cabana on June 18, 2021. Defendant denies the remaining allegations of paragraph 56 of the Complaint, and demands strict proof thereof.

57.   Defendant denies in part and admits in part the allegations of paragraph 57. Defendant admits that a massage table was out, and a Murphy bed was raised. Defendant denies that any massage oils were set up in place, and demands strict proof thereof.

58.   Defendant denies the allegations contained in paragraph 58 of the Complaint, and demands strict proof thereof.

59.   Defendant denies the allegations contained in paragraph 59 of the Complaint, and demands strict proof thereof.

60.   Defendant denies the allegations contained in paragraph 60 of the Complaint, and demands strict proof thereof.

61.   Defendant denies the allegations contained in paragraph 61 of the Complaint, and demands strict proof thereof.

62. Defendant denies the allegations contained in paragraph 62 of the Complaint, and demands strict proof thereof.

63. Defendant denies the allegations contained in paragraph 63 of the Complaint, and demands strict proof thereof.

64. Defendant denies the allegations contained in paragraph 64 of the Complaint, and demands strict proof thereof.

65. Defendant denies the allegations contained in paragraph 65 of the Complaint, and demands strict proof thereof.

66. Defendant denies the allegations contained in paragraph 66 of the Complaint, and demands strict proof thereof.

67. Defendant denies the allegations contained in paragraph 67 of the Complaint, and demands strict proof thereof.

68. Defendant denies the allegations contained in paragraph 68 of the Complaint, and demands strict proof thereof.

69. Defendant denies the allegations contained in paragraph 69 of the Complaint, and demands strict proof thereof.

70. Defendant denies the allegations contained in paragraph 70 of the Complaint, and demands strict proof thereof.

71. Defendant denies the allegations contained in paragraph 71 of the Complaint, and demands strict proof thereof.

## Count VI
### (Claim under Fla. Stat. § 934.10 – Elbadramany)

72. Defendant realleges and incorporates herein by this reference his responses to paragraphs 1 through 7 above as if fully set forth herein.

73. Defendant denies the allegations contained in paragraph 73 of the Complaint, and demands strict proof thereof.

74. Defendant denies the allegations contained in paragraph 74 of the Complaint, and demands strict proof thereof.

75. Defendant denies the allegations contained in paragraph 75 of the Complaint, and demands strict proof thereof.

76. Defendant denies the allegations contained in paragraph 76 of the Complaint, and demands strict proof thereof.

77. Defendant denies the allegations contained in paragraph 77 of the Complaint, and demands strict proof thereof.

78. Defendant denies the allegations contained in paragraph 78 of the Complaint, and demands strict proof thereof.

   a. Defendant denies the allegations contained in paragraph 78(a) of the Complaint, and demands strict proof thereof.

   b. Defendant denies the allegations contained in paragraph 78(b) of the Complaint, and demands strict proof thereof.

   c. Defendant denies the allegations contained in paragraph 78(c) of the Complaint, and demands strict proof thereof.

   d. Defendant denies the allegations contained in paragraph 78(d) of the Complaint, and demands strict proof thereof.

## Count VII (Negligent Innkeeper's Duty – TDR Master)

79-95. The allegations contained in Count VII of the Complaint, paragraphs 79 through 95, are not directed to Mr. Elbadramany. Therefore, Mr. Elbadramany is not required to answer the individual paragraphs included in Count VII. To the extent that any allegations within Count VII could be construed against Mr. Elbadramany, those allegations are expressly denied.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant Mark Elbadramany requests that Plaintiff's Complaint be dismissed as to Mr. Elbadramany, that the Plaintiff take nothing and judgment be awarded in Mr. Elbadramany's favor, including fees and costs, and that this Court grant such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED

1.      Plaintiff failed to state a cause of action in negligence or intentional torts under the circumstances of the case. Plaintiff did not plead all essential elements of the causes of action or facts to support such allegations and causes of action.

### SECOND AFFIRMATIVE DEFENSE - CONSENT

2.      Plaintiff consented to, and in some cases specifically requested, any and all touching by Mr. Elbadramany. Plaintiff consented to both giving Defendant a massage and receiving from Defendant a massage. Plaintiff's consent was express and impled and/or was inferred from Plaintiff's conduct and circumstances and the nature of their exchange.

**THIRD – ANY ALLEGED RESULTING INJURY WAS FORESEEABLE**

3.      Any physical or other injury to Plaintiff, if any, including alleged bruising, cannot be recovered as consent includes any and all foreseeable results from such consent.

**FOURTH AFFIRMATIVE DEFENSE – NO LEGAL DUTY OWED TO PLAINTIFF**

4.      Mr. Elbadramany owed no legal duty of care or otherwise to Plaintiff either by statute or common law.

**FIFTH AFFIRMATIVE DEFENSE – ASSUMPTION OF THE RISK**

5.      The cause of any damages to Plaintiff was open and obvious and Plaintiff expressly assumed the ordinary risk incident thereto.

**SIXTH AFFIRMATIVE DEFENSE – NO CAUSATION OR PROXIMATE CAUSATION TO INJURIES**

6.      None of Plaintiff's alleged injuries were caused by Mr. Elbadramany or proximately caused by Mr. Elbadramany.

**SEVENTH AFFIRMATIVE DEFENSE – SET-OFF**

7.      Defendant is entitled to a set-off for any and all compensation and/or sums received by Plaintiff from any source as a result of the incident alleged in the Complaint, including, whether or not a party to this action, in full or partial payment for any injury received or damages sustained by Plaintiff as a result of the incident alleged in the Complaint, which injury and damages are specifically denied.

**EIGHTH AFFIRMATIVE DEFENSE – APPORTIONMENT**

8.      To the extent Defendant is found to be at fault, which fault is specifically denied, he is entitled to an apportionment of damages, if any, in accordance with Section 768.81, Florida Statutes and *Fabre v. Marin,* 623 So. 2d 1182 (Fla. 1993). Further, the

13

Court shall enter judgment against each party on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of the Plaintiff, the Court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability. The subject parties that may be liable include the co-defendant named in this or any prior or subsequent complaint, and Mr. Elbadramany incorporates by reference the allegations made against them in the Complaint. Should the Plaintiff settle with or dismiss any named co-defendant(s), then this answering Defendant reserves the right to adopt and incorporate these same allegations against them, and/or receive a set-off for any settlement amount.

**NINTH AFFIRMATIVE DEFENSE – INTERVENING/SUPERSEDING CAUSE**

9.      Any alleged damages incurred by Plaintiff have an intervening and/or superseding cause completely unrelated to Mr. Elbadramany. Eight days after leaving Mr. Elbadramany's cabana (which occurred on around the evening of June 19, 2021), on or around July 27, 2021, Plaintiff moved into an apartment in Beverly Hills, California. She stayed in that apartment for approximately three and a half months before suing the owners, operators and managers of the property on December 2, 2021 in the Superior Court of Los Angeles[3] for breach of the rental agreement, covenant of quiet enjoyment, amongst other claims. The alleged damages in that case which appear at paras. 81, 82, 83, and 87 of that complaint (see DE 15-4), which is incorporated herein by reference, includes: "past and future medical expenses, loss of income, physical pain, mental

---

[3] This Court may take judicial notice of the California case, and we ask the Court to do so, by reference herein to this pleading. Rule 201, Fed. R. Evid.

14

suffering, loss of enjoyment of life, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress [. . . ] skin rashes; headaches; nausea; insomnia and sleeplessness; difficulty breathing and shortness of breath; wheezing; asthma-like symptoms; diarrhea; skin rashes, irritated eyes; frequent colds; frequent fevers; sinus irritation; chronic sneezing; and constant discomfort [. . . ] immense stress, anxiety, depression, fearfulness, worry, loss of appetite, disgust, and shame." She also alleges that her medical damages are subject to change. She alleges many of the same damages in this case which was filed on February 22, 2022, over two months *after* filing the case against her landlord. Because she cannot prove (as is her burden) which alleged damages, if any, emanate from her landlord and which emanate from Mr. Elbadramany, if any, there can be no award of damages in this case.

## TENTH AFFIRMATIVE DEFENSE – NO VIOLATION OF FLORIDA CHAPTER 934 BY DEFINITION

10.     Any interception of the encounter was consented to by both parties, and did not include wire communication (i.e. aural, Fla. Stat. § 934.02(1)), or oral communication (i.e. "uttered", Fla. Stat. § 934.02(2)).

## ELEVENTH AFFIRMATIVE DEFENSE – CLEAR SIGNAGE REGARDING SECURITY SYSTEM

11.     The camera which captured the encounter was a security system which had written notices conspicuously posted on the premises stating that a video surveillance system has been installed for the purpose of security for the premises.

## TWELFTH AFFIRMATIVE DEFENSE – SECURITY SYSTEM WAS CLEARLY AND IMMEDIATELY OBVIOUS

12.     The camera which captured the encounter was installed in such a manner that the presence of the device was clearly and immediately obvious.

**THIRTEENTH AFFIRMATIVE DEFENSE – ANY FOOTAGE OF THE ENCOUNTER WAS NOT FOR ANY PURPOSES OTHER THAN SECURITY**

13.     Any footage of the encounter was captured without intent to disseminate and only meant for security purposes.

**FOURTEENTH AFFIRMATIVE DEFENSE – MITIGATION**

14.     Plaintiff failed to mitigate her damages. By way of example only, she exhibited no injury whatsoever and did not seek immediate medical help when it was offered to her by the Sunny Isles Beach Police to be attended by rescue personnel. Therefore any resulting damages to her physical or mental state could have been, and was not mitigated.

**FIFTEENTH AFFIRMATIVE DEFENSE - COMPARATIVE NEGLIGENCE/ CONTRIBUTORY NEGLIGENCE**

15.     Plaintiff was contributorily negligent and/or comparatively negligent in her actions and conduct such that any alleged injuries or damages was proximately caused by Ms. Svistina herself. Any claim for damages is barred, or should be reduced accordingly due to her own negligent acts and conduct.

**SIXTEENTH AFFIRMATIVE DEFENSE - NO SUBJECT MATTER JURISDICTION**

16.     Plaintiff did not meet the jurisdictional threshold required to litigate in this Court pursuant to 18 U.S.C. § 1332.

**SEVENTEENTH - ESTOPPEL**

17.     Plaintiff is estopped from claiming any damages because she made a representation of material fact to Mr. Elbadramany — that she consented to mutual full-body massages. Such consent is contrary to the facts alleged in her Complaint which

16

does not mention her consent. Mr. Elbadramany relied on that representation of consent, a material fact, and detrimentally changed his position based on that reliance.

**EIGHTEENTH AFFIRMATIVE DEFENSE – UNCLEAN HANDS**

18.     Plaintiff is barred from recovering any damages from Plaintiff because she has unclean hands. Ms. Svistina's entire course of conduct in this case constitutes fraud, deceit, and bad faith and continued after her encounter with Mr. Elbadramany with her lies to the police, and the Miami Dade State Attorney's Office.

**NINETEENTH AFFIRMATIVE DEFENSE – SET-OFF OF ANY MEDICAL BILLS**

19.     Defendant asserts that he is entitled to a set off of any contractual discount of medical bills or expenses, negotiated write off of medical bills or expenses or negotiated agreement to pay medical bills or other expenses in the future pursuant to the law of collateral source setoffs and *Goble v. Frohman,* 901 So. 2d 830 (Fla. 2005). Plaintiff is not entitled to claim bills, costs or expenses incurred but waived or not actually incurred by the Plaintiff.

**TWENTIETH AFFIRMATIVE DEFENSE – UNDER THE INFLUENCE**

20.     Defendant states that, upon information and belief, Plaintiff may have been under the influence of alcoholic beverage(s) and/or drug(s) at the time of the incident described in the Complaint, and is therefore barred from recovery pursuant to Florida law, including, but not limited to, Florida Statute Section 768.36. Defendant will request leave to supplement or amend this affirmative defense following Plaintiff's production of medical records and responding to discovery related to the use of alcoholic beverages and/or drugs at the time of the incident described in the Complaint.

## INCORPORATION, ADOPTION AND RESERVATION

21.    Defendant incorporates and reserves all other affirmative defenses available under Florida law pending further investigation and discovery.

22.    Defendant hereby adopts by reference any and all Affirmative Defenses raised by any other Defendant in this cause.

23.    Defendant reserves the right to amend HIS Answer and Affirmative Defenses if appropriate after full investigation and discovery.

## DEMAND FOR JURY TRIAL

24.    Mr. Elbadramany demands trial by jury on all issues so triable as a matter of right. Mr. Elbadramany reserves the right to demand attorneys' fees and costs for the defense of this action as based on statute, rule or other grounds.

## COUNTERCLAIMS AGAINST ELENA SERGEYEVNA SVISTINA

Counterclaimant, Mark Elbadramany, ("Mr. Elbadramany"), by and through counsel, for his Counterclaims against Counterclaim Defendant, Elena Sergeyevna Svistina ("Ms. Svistina"), states and alleges as follows:

## PARTIES

1.    Mr. Elbadramany, now is, and at all times relevant to this action was, a resident and citizen of the State of Florida.

2.    On information and belief, Ms. Svistina alleges that she is now, and at all times relevant to this action was, a Russian citizen and Russian national living in California. (See DE 19-2, Declaration by Ms. Svistina).

18

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action based upon complete diversity pursuant to 28 U.S.C. § 1332 because the parties to this action are citizens of different countries, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5.      Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## FACTUAL ALLEGATIONS

### *THE CONSENSUAL ENCOUNTER*

6.      Mr. Elbadramany incorporates his statements and allegations in Paragraphs 1-77 of his answer as if fully set forth herein.

7.      On or around June 18, 2021, Ms. Svistina messaged Mr. Elbadramany on the Couchsurfing messaging application and asked for a stay with Mr. Elbadramany. She asked to stay from June 18 to June 21, 2021.

8.      Mr. Elbadramany texted back that he could host her from June 18 to June 20 or June 21, 2021

9.      Mr. Elbadramany asked where she was at that moment, and she said she was already in South Beach, Florida.

10.     Ms. Svistina asked Mr. Elbadramany where he lived and that she loved his jet skiing pictures.

11.     Mr. Elbadramany stated he may be able to take her jet skiing on Sunday (i.e. June 20, 2021) but he would have to see.

12.     Mr. Elbadramany offered, and Ms. Svistina agreed, to stay at his cabana studio at Trump Tower I.

13.     She then asked what was the latest time she could show up that night on June 18, 2021. She stated that she wanted to see if she had enough time to go back to her hotel and pack her bags.

14.     Mr. Elbadramany texted that she could arrive at around 11 pm latest.

15.     She asked if she had to bring towels or bed sheets, and Mr. Elbadramany said did not.

16.     Mr. Elbadramany stated she could also arrive the next day, June 19, 2021 before noon or after 8 pm.

17.     Ms. Svistina stated that she was excited to stay in his cabana studio, and that he would be her "first friend in Miami. :)" She stated she would let him know if it made sense to go over to him later that night, or wait until the morning.

18.     Ms. Svistina decided to meet Mr. Elbadramany late that night, rather than wait until the next morning.

19.     Upon information and belief, Ms. Svistina went back to her hotel in South Beach, Florida and packed her belongings. She ordered an Uber from South Beach to Sunny Isles Beach on the night of June 18, 2021.

20.     Ms. Svistina arrived close to 11 pm on the night of June 18, 2021 at TDR Tower I Sunny Isles Beach, Florida where the cabana studio is located.

21.     Ms. Svistina asked for his number and he gave it to her.

22.     Mr. Elbadramany met Ms. Svistina in the lobby area of Tower 1 of the Trump Tower Condominium.

23.     Mr. Elbadramany helped carry Ms. Svistina's luggage and showed her to the cabana studio at around 11:05 pm on June 18, 2021.

24.     Upon information and belief, Ms. Svistina chose to stay with Mr. Elbadramany, a complete stranger, because she was attracted to him based on the images she saw on Couchsurfing.

25.     Upon information and belief, Ms. Svistina chose to stay with Mr. Elbadramany, a complete stranger, who she believed was a successful and wealthy man living in a fancy oceanfront condominium.

26.     Upon information and belief, Ms. Svistina chose to stay with Mr. Elbadramany, a complete stranger, because she thought she could lure him into an encounter and then attempt to defraud and extort him by misusing the criminal and civil justice system.

27.     Upon entering the studio cabana, Mr. Elbadramany showed her the space, the bathroom, and the Eufy security camera. Mr. Elbadramany even walked over and pointed to and touched the camera showing it to Ms. Svistina. Ms. Svistina smiled at the camera.

28.     Next to the Eufy doorbell camera on the shelf was a decal sticker by Eufy notifying that 24/7 monitoring was ongoing.

29.     Mr. Elbadramany explained to Ms. Svistina that the Eufy camera was a motion-sensored security camera. He explained that he used the cabana to house his electronic equipment, was a place to work, and occasionally to host guests.

30.     Ms. Svistina acknowledged the presence of the security camera, understood its function, and smiled directly into the camera.

31.     Ms. Svistina did not ask to have the camera turned away or turned off.

32.     Mr. Elbadramany went to the small fridge that was inside the cabana and she followed. He handed her a cold water bottle that she accepted. Mr. Elbadramany took a cold water bottle for himself.

33.     Ms. Svistina made herself comfortable by sitting on the massage table.

34.     The parties chatted pleasantly for about four minutes while Ms. Svistina sat on the massage table, and Mr. Elbadramany was standing nearby.

35.     After standing for about four minutes, Mr. Elbadramany sat down at the other end of the massage table holding his water bottle. In between them was her water bottle and her purse.

36.     The parties sat on the massage table together and chatted for about another five minutes. Mr. Elbadramany made her laugh and they had an easy-going conversation.

37.     During this conversation, the Eufy security camera was directed at the parties just a few feet away from where they sat on the massage table, and had circular lights that brightly illuminated in operation.

38.     When the camera was in function it was clearly visible due to the bright illuminating lights and the proximity to Mr. Elbadramany and Ms. Svistina.

39.     Ms. Svistina was at ease and comfortable at all times during this conversation, even laughing and making jokes.

40.     At no time during this 10-minute conversation did the parties touch in any manner, but got to know each other.

41.     Ms. Svistina was very forward with Mr. Elbadramany asking him about his source of wealth, and asked him to teach her how to make money by trading in stocks, securities and in cryptocurrency.

42.     Ms. Svistina then offered Mr. Elbadramany a massage, which he accepted.

43.     Upon acceptance, Ms. Svistina took her purse and placed it on a table in order to clear the massage table for Mr. Elbadramany.

44.     Mr. Elbadramany undressed down to his underwear and lay face-down underneath a brown blanket which covered his body from the middle of his back to his toes.

45.     Ms. Svistina only massaged Mr. Elbadramany on exposed skin, meaning his upper back and shoulders.

46.     After about six minutes, Ms. Svistina unhooked the back of her dress herself, and resumed massaging Mr. Elbadramany.

47.     Ms. Svistina pushed the blanket further down along Mr. Elbadramany's waistline, and continued the massage.

48.     Ms. Svistina also turned back and looked into the brightly lit camera and again did not request that it be turned off or turned away.

49.     Mr. Elbadramany then turned over and was lying face upwards.

50.     Ms. Svistina did not protest, and encouraged his change in position.

51.     Soon after turning over, Mr. Elbadramany asked Ms. Svistina if she would like to turn on ambient light and music. She said yes. Mr. Elbadramany asked her what color of ambient light. She said red. Mr. Elbadramany said the commands to the device to turn on red lights, and played soft music.

52.     Mr. Elbadramany was massaged for approximately 36 minutes by Ms. Svistina.

53.     When Ms. Svistina finished massaging Mr. Elbadramany, she requested Mr. Elbadramany massage her, which he did.

54.     Mr. Elbadramany put his top and shorts back on before he massaged her.

55.     Ms. Svistina did not go to any bathroom to change or undress as she kept her short sundress on and just lay on the massage table face down.

56.     Before placing her body face-down on the massage table, she loosened the top of her dress to expose more of her shoulders and back for the massage.

57.     Ms. Svistina lay underneath the brown blanket with her back and shoulders exposed, and the brown blanket covering her from the waist down to her toes.

58.     Ms. Svistina then specifically asked Mr. Elbadramany to massage her hamstring area telling him that her hamstrings had become tight as a result of her activities prior to her arriving at the cabana studio.

59.     After about sixteen minutes, the parties mutually agreed to end the massage.

60.     Ms. Svistina remained very friendly and never complained of or intimated that anything improper had occurred.

61.    She then sat up on the massage table and arranged her dress. She smiled at Mr. Elbadramany and engaged him in pleasant conversation while he was standing near her smiling and talking as well.

62.    He then stored the massage table and pulled down the Murphy bed, he bid her farewell and exited the premises.

63.    Their total encounter lasted around 76-77 minutes from around 11:05 pm on June 18, to around 12:23 am on June 19, 2021.

### MS. SVISTINA GETS UPSET AND ASKS TO STAY LONGER

64.    The next morning, Saturday, June 19, 2021 at around 11:25 am, Mr. Elbadramany texted Ms. Svistina good morning and said he hoped she was having a great time. He texted that he had a guest arriving the next day, Sunday, June 20, 2021, and asked her kindly to leave at around 11 am or so.

65.    Ms. Svistina was upset. At around 11:36 am she texted back that he had told her the night before that checkout was on Sunday evening, not Sunday morning. She stated that she had already told her friend to pick her up on Sunday, June 20 in the evening. She asked him why he was telling her different information now, and that her friend would not be able to pick her up Sunday morning. She further texted him that he knew she did not have a car and had many bags.

66.    Ms. Svistina further asked Mr. Elbadramany if he could ask the next guest to wait until she moved out tomorrow evening, June 20. She stated that she did not feel well, could not sleep all night, and was feeling exhausted, and was in bed all day.

67.    At 11:54 am on June 19, 2021, Mr. Elbadramany texted "Ok. He just told me this morning I didn't know. Hope you feel better."

*MS. SVISTINA PUTS INTO MOTION HER PLAN TO OBTAIN A WINDFALL*

68.     At or around 6:20 pm on June 19, 2021, Ms. Svistina called the Sunny Isles Beach Police.

69.     Before the police arrived on the scene, Ms. Svistina put the Murphy bed back up, and pulled out and set up the massage table and placed oil in the middle of the table.

70.     Before the police arrived on the scene, Ms. Svistina also grabbed, touched, and tampered with the Eufy security camera, the smoke detector, and took multiple pictures and videos of the cabana.

71.     Ms. Svistina gave a hand-written sworn statement to the police.

72.     The hand-written statement by Ms. Svistina was her account of what transpired. The statement contained false statements and serious omissions. She did not need any help in writing this statement in English.

73.     The police visit resulted in an Investigation/Incident Report dated June 19, 2021 (the "Police Report"). She did not need a translator, nor did she ask for one, when dealing with the police officers.

74.     The Police Report states that the police were dispatched to investigate "hidden cameras located in a room," not "battery" or "unlawful sexual touching."

75.     Her sworn statement is not a complete or accurate, and contains demonstrable serious falsehoods.

76.     The Police Report of what Ms. Svisitna told them is also not complete or accurate, contradicts her own handwritten statement and contains falsehoods.

77.     By way of example, Ms. Svistina conveniently forgot to mention the 36-minute massage she gave Mr. Elbadramany, the majority of the brief encounter, when he was lying face-down, and she was a few feet away from the door to the cabana.

78.     By way of example of the lies, Ms. Svistina stated that she was pushed into the bathroom which never happened.

79.     Ms. Svistina's sworn statement also failed to mention that after Mr. Elbadramany left, she could have left, but did not.

80.     In fact, after their encounter on the night of June 18, 2021, Ms. Svistina demanded to stay until Sunday, June 20, 2021 in the evening, as expressed by text message on June 19 at around 11:36 am, a fact, which she also intentionally did not provide to the police.

81.     Ms. Svistina signed an authorization to search the cabana, when she had no authority to do so.

82.     Ms. Svistina left in the evening/night of June 19, 2021, after the police left.

83.     Before leaving, Ms. Svistina trashed and vandalized the cabana.

84.     Mr. Elbadramany texted Ms. Svistina saying that she had vandalized the cabana and assumed she had stolen the electronic equipment, which apparently was seized by the police.

85.     Mr. Elbadramany reported her trashing and vandalizing the cabana and stolen items to Couchsurfing.

86.     At or around 9:17 pm on June 19, 2021, Ms. Svistina texted Mr. Elbadramany and stated that she left that night and had a fever all day, but that was a lie.

27

87.     Mr. Elbadramany asked if she was ok, whether she went to urgent care, and whether she was vaccinated. He texted "Hope you feel better soon."

88.     Ms. Svistina texted back that she had a fever all day, she could not sleep, and she got medicine, and was staying with her friend.

89.     At around 10:47 pm, on June 19, 2021, Mr. Elbadramany texted Ms. Svistina "Ok, hope you feel better." And she responded "Thank you !!!"

90.     Based on  Ms. Svisitna's malicious lies to the police and to the State Attorney's office, Mr. Elbadramany was arrested, charged with a misdemeanor count of battery (see DE 15-7), sued by Ms. Svistina demanding millions of dollars, and has spent hundreds of thousands of dollars to defend both cases.

91.     Ms. Svistina was interviewed at least twice by two different Assistant State Attorneys.

92.     After those interviews, the State dropped the case against Mr. Elbadramany.

93.     Mr. Elbadramany's criminal charge was dropped by nolle prose with the help of his lawyers, after they presented incontrovertible evidence of the truth to the State.

94.     The civil case and the criminal case are nothing more than Ms. Svistina's attempt to manipulate the judicial system in order to obtain a financial gain from a US citizen based on lies, fraud, and deceit.

95.     Ms. Svistina is abusing the civil court system and this country's criminal process as extortionate vehicles.

## COUNT 1 – MALICIOUS PROSECUTION

96.     Mr. Elbadramany re-alleges and incorporates herein by reference the facts as stated in paragraphs 1-95 above.

97.     Ms. Svistina's criminal complaint to the Sunny Isles Beach Police Department and the State Attorney's Office is based on lies and forms the basis of this malicious prosecution count.

98.     The misdemeanor battery charge was an original criminal judicial proceeding against Mr. Elbadramany that was commenced and continued by Ms. Svistina.

99.     As the complainant, Ms. Svistina was and is the legal cause of the original criminal proceeding against Mr. Elbadramany.

100.    The termination of the criminal case constitutes is a bona fide termination of that proceeding in favor of the Mr. Elbadramany.

101.    There was an absence of probable cause for the original proceeding because it was all based on lies, fraud, deceit, and serious omissions propounded by Ms. Svistina.

102.    There was malice on the part of Ms. Svistina in commencing the criminal proceeding.

103.    Mr. Elbadramany has suffered economic damages in the form of legal fees and costs in connection with the defense of his criminal case.

WHEREFORE, Mr. Elbadramany, Counter-Plaintiff, demands trial by jury, and judgment for fees and costs related to his defense in the State criminal case.

## COUNT 2 – ABUSE OF PROCESS

104.    Mr. Elbadramany re-alleges and incorporates herein by reference the facts as stated in paragraphs 1-105 above.

105.    Ms. Svistina's criminal and civil cases against Mr. Elbadramany constitute an illegal, improper, and/or perverted use of the judicial process by her.

106.    Ms. Svistina has an ulterior motive or purpose in exercising the illegal, improper, and/or perverted process.

107.    Upon information and belief, Ms. Svistina wants to exact vengeance against, and publicly embarrass and humiliate, Mr. Elbadramany for not allowing her to stay longer for free at his cabana, as well as to obtain a financial windfall.

108.    Upon information and belief, Ms Svistina, a Russian citizen with no permanent immigration status in the Unites States, is engaging in a pattern of abuse of the US civil and criminal justice systems for profit.

109.    Mr. Elbadramany has suffered economic damages in the form of legal fees and costs in connection with the defense of his criminal case.

WHEREFORE, Mr. Elbadramany, Counter-Plaintiff, demands trial by jury and judgment for fees and costs related to his defense in the State criminal case and the civil case commenced by Ms. Svistina against Mr. Elbadramany in this Court.

Respectfully submitted,

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: (305) 679-5700
Facsimile: (305) 679-5710
By:    */s/ Edward R. Shohat*
       **Edward R. Shohat**
       Florida Bar No. 152634
       eshohat@joneswalker.com
       **Monique Garcia**

Florida Bar No. 0085004
mgarcia@joneswalker.com
**David S. Weinstein**
Florida Bar No. 749214
dweinstein@joneswalker.com
*Counsel for Defendant Mark*
*Elbadramany*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 12TH day of July, 2022 , I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Edward R. Shohat*
Edward R. Shohat

## SERVICE LIST:

Raymond R. Dieppa
FLORIDA LEGAL, LLC
12550 Biscayne Blvd., Suite 209
North Miami, FL 33181
Phone: (305) 901-2209
Fax: (786) 870-4030
Email: Ray.Dieppa@floridalegal.law
 fv@floridalegal.law
John P. Kristensen, Pejman Ben-Cohen, Megan Gyongyos
CARPENTER & ZUCKERMAN
8827 W. Olympic Blvd.
Beverly Hills, CA 90211
Phone: (310) 273-1230
Email: kristensen@cz.law
 pej@cz.law
 mgyongyos@cz.law
*Counsel for Plaintiff Elena Svistina*

31

Daniel J. Santaniello
Valeria R. Edwards
LUKS, SANTANIELLO, PETRILLO, COHEN & PETERFRIEND
301 Yamato Road, Suite 4150
Boca Raton, FL 33431
Phone: (561) 893-9088
Fax: (561) 893-9048
Email: LUKSBOCA-Pleadings@LS-Law.com
        LUKSMIA-Pleadings@LS-Law.com
        vedwards@insurancedefense.net
        BSpiliotopoulos@insurancedefense.net
*Counsel for TDR Towers Master Association, Inc.*