UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Elena Svistina
     Plaintiff(s),

vs.                                        Case No.: 22-cv-20525-BB

Mark Fadel Elbadramany;
TDR Towers Master Association, Inc.;
Firstservice Residential Florida, Inc.;
Universal Protection Service, LLC d/b/a Allied
Universal Security Services;
     Defendant(s).

_____/

## **AMENDED COMPLAINT**

     COMES NOW, the Plaintiff Elena Svistina  (hereinafter "Plaintiff"), and files this lawsuit against the Defendants Mark Fadel Elbadramany ("Elbadramany"),  TDR Towers Master Association, Inc. ("TDR Master"); Firstservice Residential Florida, Inc. ("Firstservice Residential"); Universal Protection Service, LLC d/b/a Allied Universal Security Services ("Allied Universal"); and states as follows:

### **General Allegations Applicable to all Counts**

1.     This is an action within the jurisdiction of this Court as the amount in controversy and Plaintiff's damages exceed $75,000.00 exclusive of interest, costs, and attorney's fees pursuant to 28 U.S. Code § 1332(a), and this action is between citizens of different States as;

     a.  Plaintiff is a citizen of Russia within the meaning of 28 U.S.C. 1332(a), and is not and has never been a citizen or legal resident of the United States, nor has Plaintiff ever been lawfully admitted for permanent residence in the United States.

     b.  Defendant  Elbadramany. is a citizen of and domiciled in the State of Florida.

    c.  Defendant TDR Master is a Florida Corporation with its principal place of business in the State of Florida.

    d.  Defendant Firstservice Residential Florida, Inc. is a Florida Corporation with its principal place of business in the State of Florida.

    e.  Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services is a California limited liability company with its principal place of business in California.

        i.  Universal Protection Service, LLC's sole member is Universal Protection Service, LP, which maintains its principal place of business in California.

2.    Venue is proper in the United States District Court for the Southern District of Florida (Miami division) pursuant to 28 U.S. Code § 1391(b)(1) and 28 U.S. Code § 1391(d) as it is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

3.    All claims herein are plead in the alternative and regardless of consistency in accordance with Federal Rule of Civil Procedure 8(d).

4.    On or about June 18, 2021, Elbadramany using the alias "Mica Elb" lured the Plaintiff to a cabana located at the Trump Towers Condominium located in Sunny Isles Florida, where Elbadramany also owned a condominium located at 15901 Collins Ave Unit 2006, Sunny Isles Beach, Florida ("the condominium"). Elbadramany, then proceeded to expose himself, batter, and sexually assault the Plaintiff.

5.    Through use of the online website and application known as Couchsurfing.com, Elbadramany using the alias "Mica Elb" created an account and user profile offering travelers to stay at his condominium including use of the amenities. See Fig. 1.



*Figure 1- Elbadramany's Couchsurfing Profile*

6.      Couchsurfing.com is an application and website which offers budget travelers low cost accommodation around the world. Individuals make their homes available to travelers for the ostensible purpose of good will, friendship, and cultural exchanges.

7. After communicating with Elbadramany via Couchsurfing, Elbadramany offered Plaintiff accommodation at his condominium for three nights commencing on June 18, 2021 through June 21, 2021.

8. Subsequently, Plaintiff made a good-faith report of Elbadramany's conduct to the Sunny Isles Beach Police Department and Miami-Dade State Attorney's office. After an independent investigation by Sunny Isles Beach Police Department and Miami-Dade State Attorney's Office, these agencies found probable cause to arrest and charge Elbadramany with battery.

## COUNT I
(Sexual Battery - Elbadramany)

9. Plaintiff repeats and realleges paragraphs 1-8.

10. Shortly after arriving at Elbadramany's condominium from her home in California on the evening of June 18, 2021, Plaintiff was escorted by Elbadramany to a cabana located on the premises of the Trump Towers Condominium.

11. Upon entering the cabana Plaintiff noticed the murphy bed raised to the wall and a black massage table with massage oil set up in place.

12. Elbadramany initially offered to massage Plaintiff but she declined. However, Elbadramany insisted and proceeded to grab Plaintiff by the arms and shoulders.

13. Despite Plaintiff's protests Elbadramany continued to grab Plaintiff by the arms and shoulders and proceeded to remotely turn off the lights and play suggestive music. After Plaintiff refused to be massaged by Elbadramany, he then demanded that she massage him.

14. Elbadramany, subsequently proceeded to the bathroom and after picking up a towel demanded that Plaintiff put on the towel and undress while simultaneously pushing Plaintiff into the bathroom of the cabana.

15.     Plaintiff remained in bathroom as she was extremely disturbed and frightened by Elbadramany's conduct.

16.     After exiting the bathroom, Plaintiff observed Elbadramany laying on the massage table. Elbadramany again demanded that Plaintiff massage him while he was undressed.

17.     Elbadramany, then proceeded to get up from the massage table and grabbed the Plaintiff's buttocks.

18.     Elbadramany, then rose from the table and proceeded to press his undressed body and genitals against the Plaintiff against her will.

19.     His assault and battery on the Plaintiff continued as he rubbed his hands across the Plaintiff's body and proceeded to sexually assault her against her will.

20.     At all times Elbadramany's actions in touching and sexually assaulting the Plaintiff, resulted in the infliction of a harmful or offensive contact and/or the apprehension that such contact was imminent and therefore amounted to battery under Florida law.[1]

21.     Subsequently, Plaintiff reported Elbadramany's conduct to the Sunny Isles Beach Police Department and Miami-Dade State Attorney's office resulting in his being arrested and charged with battering the Plaintiff.

22.     As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

---

[1]See Fla. Stat. § 784.03; *Clark v. State*, 783 So. 2d 967, 968-969 (Fla. 2001); *Paul v. Holbrook*, 696 So. 2d 1311,1312 (Fla. 5th DCA 1997); *Walker v. State*,120 So. 3d 96 (Fla. 4thDCA 2013).

23.     Additionally, as Elbadramany's actions were intentional, malicious, reckless and exhibiting of an extreme disregard for the likelihood of harm, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages including punitive damages against Elbadramany.

## COUNT II
(Negligence Innkeeper's duty - Elbadramany)

a.      Plaintiff repeats and realleges paragraphs 1-8.

b.      At all times material and since June of 2010, Elbadramany advertised his condominium at the Trump Towers for purposes of providing room and board to travelers via the Couchsurfing.com website and application, and use of the amenities.

c.      Elbadramany's Couchsurfing account contained numerous references from previous guests and stated clearly that he was a "verified member" of Couchsurfing who was currently accepting guests. See Figure 3.



*Figure 2- Elbadramany's Couchsurfing Profile for Trump Towers*

24.     At all times material Plaintiff accepted Elbadramany's invitation to reside at his condominium for a total of three nights.

25.     At all times material Elbadramany represented that his condominium would be a secure and safe place for Plaintiff to reside at during her trip to South Florida.

26.     After arriving at the Trump Towers, Elbadramany checked Plaintiff in at the Trump Towers reception and provided her with an access card for use of the amenities.

27.     Accordingly, as the owner of the premises which had been furnished for use of the Plaintiff as a hotel or temporary residence, Elbadramany owed Plaintiff a duty of reasonable care to provide for

her security and protect her from any reasonably foreseeable dangers including reasonably foreseeable criminal conduct.

28. Elbadramany breached these duties of care by engaging the following acts and omissions;

a. Failing to warn Plaintiff that Elbadramany intended to sexually assault the Plaintiff while she was staying with him as a guest at his condominium.

b. Failing to ensure Plaintiff's room was properly secured against intruders;

c. Failing to undertake reasonable security measures;

d. Failing to warn Plaintiff that her room contained hidden cameras which were recording her without her knowledge;

29. As a direct and proximate result of the foregoing breach of duties and negligence Plaintiff was injured when she was battered and assaulted in her room by Elbadramany.

30. As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages against Elbadramany.

# COUNT III

(Negligent Misrepresentation - Elbadramany)

31.    Plaintiff repeats and realleges paragraphs 1-8.

32.    At all times material Elbadramany negligently made the following misrepresentations of material fact to the Plaintiff under circumstances of which he ought to have known of their falsity.

e.   Misrepresentation of his actual name on his Couchsurfing.com profile as "Mica Elb" when his real name was Mark Fadel Elbadramany.

f.   Misrepresentation of the nature of Plaintiff's actual accommodations wherein Elbadramany's profile indicated Plaintiff would be residing in a 3.5 bedroom luxury condominium, but when Plaintiff arrived she was told to sleep in a cabana outside the condominium on the ground floor of the Trump Towers..

g.   Misrepresentation of the safety of the premises when Elbadramany failed to communicate his intention to have sexual relations with the Plaintiff.

h.   Misrepresentation of whether Plaintiff's personal privacy would be respected, when Elbadramany failed to advise Plaintiff of hidden cameras on the premises including in the bathroom.

33.    At all times the foregoing misrepresentations by Elbadramany were made with the intention of inducing Plaintiff to travel from California to stay at Elbadramany's condominium at the Trump Towers.

34.    At all times had Plaintiff been aware of any of the foregoing misrepresentations by Elbadramany she would not have travelled to meet him nor allowed herself to stay at his condominium.

35.    As a direct and proximate result of the foregoing negligent misrepresentations, Plaintiff was injured when she acted in justifiable reliance of Elbadramany's misrepresentation and elected to travel South Florida and stay with Elbadramany at his condominium at the Trump Towers.

36.     As a direct and proximate result Plaintiff was injured when she was sexually assaulted by Elbadramany at his cabana at the Trump Towers.

37.     As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages against Elbadramany.

## **COUNT IV**
(False imprisonment - Elbadramany)

38.     Plaintiff repeats and realleges paragraphs 1-8.

39.     Shortly after arriving at Elbadramany's condominium from her home in California on the evening of June 18, 2021, Plaintiff was escorted by Elbadramany to a cabana located on the premises of the Trump Towers Condominium.

40.     Upon entering the cabana Plaintiff noticed the murphy bed raised to the wall and a black massage table with massage oil set up in place.

41.     Elbadramany initially offered to massage Plaintiff, however, Plaintiff declined. However, Elbadramany insisted and proceed to grab Plaintiff by the arms and shoulders.

42.     Despite Plaintiff's protests Elbadramany continued to grab Plaintiff by the arms and shoulders and proceeded to remotely turn off the lights and play suggestive music. After Plaintiff refused to be massaged by Elbadramany, he demanded that she massage him.

43. Elbadramany, then proceeded to the bathroom and after picking up a towel demanded that Plaintiff put on the towel and undress while simultaneously pushing Plaintiff into the bathroom of the cabana.

44. Plaintiff remained in bathroom as she was extremely disturbed and frightened by Elbadramany's conduct.

45. After exiting the bathroom, Plaintiff observed Elbadramany laying on the massage table. Elbadramany again demanded that Plaintiff massage him while he was undressed.

46. Elbadramany, then proceeded to get up from the massage table and grab the Plaintiff's buttocks.

47. Elbadramany, then rose from the table and proceeded to press his body and genitals against the Plaintiff against her will.

48. His assault and battery on the Plaintiff continued as he rubbed his hands across the Plaintiff's body and proceeded to sexually assault her against her will.

49. Plaintiff repeatedly attempted to flee the cabana but Elbadramany prevented her from leaving by use of physical force or the threat of physical force.

50. At all times Elbadramany's conduct in confining Plaintiff to the cabana and preventing her from leaving to escape Elbadramany's sexual battery of the Plaintiff constituted an unlawful detention and deprivation of the Plaintiff's liberty against her will.

51. Furthermore, Elbadramany unlawful detention of the Plaintiff was without legal authority or cover of law justifying such confinement.

52. Finally, in detaining the Plaintiff at the Trump Towers cabana for the purpose of sexually assaulting her and detaining her against her will such confinement by Elbadramany was unreasonable and unwarranted under the circumstances.

53.     As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

54.     Additionally, as Elbadramany's actions were intentional, malicious, reckless and exhibiting of an extreme disregard for the likelihood of harm, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages including punitive damages against Elbadramany.

## <u>COUNT V</u>
(Invasion of Privacy- Elbadramany)

55.     Plaintiff repeats and realleges paragraphs 1-8.

56.     At all times material Elbadramany intentionally intruded physically or otherwise, upon the solitude or seclusion of the Plaintiff by engaging in the following conduct.

57.     Shortly after arriving at Elbadramany's condominium from her home in California on the evening of June 18, 2021, Plaintiff was escorted by Elbadramany to a cabana located on the premises of the Trump Towers Condominium.

58.     Upon entering the cabana Plaintiff noticed the murphy bed raised to the wall and a black massage table with massage oil set up in place.

59.     Elbadramany initially offered to massage Plaintiff, however, Plaintiff declined. However, Elbadramany insisted and proceed to grab Plaintiff by the arms and shoulders.

60. Despite Plaintiff's protests Elbadramany continued to grab Plaintiff by the arms and shoulders and proceeded to remotely turn off the lights and play suggestive music. After Plaintiff refused to be massaged by Elbadramany, he demanded that she massage him.

61. Elbadramany, then proceeded to the bathroom and after picking up a towel demanded that Plaintiff put on the towel and undress while simultaneously pushing Plaintiff into the bathroom of the cabana.

62. Plaintiff remained in bathroom as she was extremely disturbed and frightened by Elbadramany's conduct.

63. After exiting the bathroom, Plaintiff observed Elbadramany laying on the massage table. Elbadramany again demanded that Plaintiff massage him while he was undressed.

64. Elbadramany, then proceeded to get up from the massage table and grab the Plaintiff's buttocks.

65. Elbadramany, then rose from the table and proceeded to press his nude body and genitals against the Plaintiff against her will.

66. Elbadramany's assault and battery on the Plaintiff continued as he rubbed his hands across the Plaintiff's body and proceeded to remove her clothing and undergarments sexually assault her against her will.

67. Subsequent to Elbadramany's assault Plaintiff discovered that Elbadramany had surreptitiously installed hidden cameras in various locations in the cabana, including the bathroom.

68. One such camera was apparently disguised as smoke detector which Elbadramany used to record or attempt to record Plaintiff while she was using the bathroom. See Fig. 2.



*Figure 3 - Smoke Detector with hidden camera lens*

69.     At no time did Elbadramany ever notify or otherwise warn the Plaintiff that he had installed hidden cameras in the cabana.

70.     In assaulting the Plaintiff, removing her clothing, and video recording her against her will and without her knowledge, Elbadramany intentionally intruded on the solitude and seclusion of the Plaintiff; all of which were areas and places where Plaintiff was entitled to a reasonable expectation of privacy.

71.     As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

72.     Additionally, as Elbadramany's actions were intentional, malicious, reckless and exhibiting of an extreme disregard for the likelihood of harm, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages including punitive damages against Elbadramany.

## COUNT VI
(Claim under Florida Stat. § 934.10 - Elbadramany)

73.     Plaintiff repeats and realleges paragraphs 1-8.

74.     Subsequent to Elbadramany's sexually assaulting Plaintiff she discovered that Elbadramany had surreptitiously installed hidden cameras in various locations in the cabana, including the bathroom.

75.     One such camera was apparently disguised as a smoke detector which Elbadramany used to record or attempt to record Plaintiff while she was using the bathroom. See Fig. 2.

76.     At no time did Elbadramany ever notify or otherwise warn the Plaintiff that he had installed hidden cameras in the cabana.

77.     At no time did Elbadramany ever notify or otherwise warn the Plaintiff that he had installed hidden cameras in the cabana.

78.     At all times these hidden cameras had been placed in the cabana where the Plaintiff was temporarily residing for the express purpose of permitting Elbadramany, to intentionally intercept, endeavor to intercept, or procure Plaintiff's oral, or electronic communications in violation of Florida Statutes Section 934.03.

79.     As a direct and proximate result Elbadramany intercepted or endeavored to intercept Plaintiff's oral or electronic communications, and therefore Plaintiff is entitled to the following remedies pursuant to Florida Statutes Section 934.10;

(a) Preliminary or equitable or declaratory relief as may be appropriate;

(b) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(c) Punitive damages; and

(d) A reasonable attorney's fee and other litigation costs reasonably incurred.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages including punitive damages against Elbadramany.

## <u>COUNT VII</u>
(Negligence Innkeeper's duty – TDR Master)

80.     Plaintiff repeats and realleges paragraphs 1-8.

81.     At all times material TDR Master was the master condominium association for the Trump Towers Condominiums located in Sunny Isles Beach, Florida, organized under Florida Statutes Ch. 718.

82.     At all times material Elbadramany was condominium unit owner and member of the TDR Master condominium association.

83.     At all times material and since June of 2010, Elbadramany advertised his condominium at the Trump Towers for purposes of providing room and board to travelers via the Couchsurfing.com website and application, and use of the amenities.

84.     Elbadramany's Couchsurfing account contained numerous references from previous guests and stated clearly that he was a "verified member" of Couchsurfing who was currently accepting guests. See Figure 3.

85.     At all times TDR Master knew or should have known that Elbadramany was operating an unlicensed short term vacation rental in violation of Sunny Isles Beach Code of Ordinances Article II Section 217 *et seq*. Or in the alternative was permitting Elbadramany to allow guests from Couchsurfing.com to reside at the Trump Towers with TDR Master's approval.

86.     At all times TDR Master knew or should have known that Elbadramany was using the cabanas which were owned, monitored, and controlled by TDR Towers, to host overnight guests and during hours prohibited by TDR Towers' condominium's rules and regulations and

87.     At all times TDR Master owned and controlled the common areas of the Trump Towers Condominium, including the cabanas located on the premises.

88.     At all times TDR Master allowed the common areas including the cabanas to be used by outside guests of condominium owners and association members such as Elbadramany.

89.     At all times TDR Master further undertook to provide security on the premises of the Trump Towers Condominium for the purpose of ensuring the safety of the members of its condominium association and their guests.

90.     On or about June 18, 2021, Plaintiff arrived at Trump Towers Condominium and was checked into the reception as a guest of Elbadramany, and was provided with an access card for use of the amenities on the premises.

91.     Elbadramany, subsequently provided Plaintiff with access to a cabana owned and operated by TDR Master, which contained a bed and bathroom to be used as temporary accommodation for the Plaintiff.

92.     At all times material TDR Master through its employees knew or should have known that Plaintiff was residing as a guest on its property specifically in the cabanas.

93.     Accordingly, TDR Master owed Plaintiff a duty as the owner and operator of the premises which had been furnished for use of the Plaintiff as a hotel or temporary residence;

    i.   of reasonable care to provide for her security and protect her from any reasonably foreseeable dangers including reasonably foreseeable criminal conduct.

j. to manage the property and perform all services which it had undertaken gratuitously or for consideration including the task of providing security to deter criminal conduct reasonably and with due care.

94. TDR Master breached these duties of care by engaging the following acts and omissions;

a. Failing enact proper security and property management protocols to prevent the ongoing illegal operation of short term leases, vacation rentals, and unauthorized use of the property for hosting of short-term guests.

b. Failing to warn Plaintiff that Elbadramany intended to sexually assault the Plaintiff while she was staying with him as a guest at his condominium;

c. Permitting Elbadramany to install hidden camera equipment in the cabanas for purpose of illegally recording the Plaintiff;

d. Permitting Elbadramany to operate an unlicensed illegal short term rentals at the Trump Towers Condominium.

e. Permitting Elbadramany operate the cabanas on TDR Towers' premises for the purpose of hosting overnight guests in violation of TDR Towers' rules and regulations and in violation of Sunny Isles Beach Code of Ordinances Article VII Section 265-35 *et seq*. which prohibits the rental or leasing of cabanas and/or their use as a dwelling unit.

f. Failing to follow security post orders;

g. Failing to ensure the presence of sufficient properly trained security personnel on the premises;

h. Failing to conduct routine security checks of the premises including the cabanas;

i. Failing to ensure Plaintiff's room was properly secured against intruders;

j. Failing to undertake reasonable security measures to deter criminal conduct including sexual assault on the premises;

k. Failing to render aid to the Plaintiff after she was sexually assaulted;

l. Failing to properly respond to Plaintiff's sexual assault, including documenting the incident, and investigating the allegations;

m. Failing to turn over evidence of Plaintiff's sexual assault to law enforcement investigating Plaintiff's allegations;

n. Failing to warn Plaintiff that her room contained hidden cameras which were recording her without her knowledge;

95. At all times based on the history of prior criminal activity on the subject premises and the surrounding vicinity it was reasonably foreseeable that criminal conduct directed toward guests at the Trump Towers Condominium could occur.

96. As a direct and proximate result of the foregoing breach of duties and negligence Plaintiff was injured when she was battered and assaulted in TDR Master's cabana by Elbadramany.

97. As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future..

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages against TDR Master.

## COUNT VIII

(Negligence vicarious liability for breach of nondelegable duties – TDR Master)

98. Plaintiff repeats and realleges paragraphs 1-8.

99. At all times material TDR Master was the master condominium association for the Trump Towers Condominiums located in Sunny Isles Beach, Florida, organized under Florida Statutes Ch. 718.

100. At all times TDR Master owned and controlled the common areas of the Trump Towers Condominium, including the cabanas located on the premises.

101. At all times TDR Master allowed the common areas including the cabanas to be used by outside guests of condominium owners and association members such as Elbadramany.

102. At all times TDR Master further undertook to provide security on the premises of the Trump Towers Condominium for the purpose of ensuring the safety of the members of its condominium association and their guests.

103. Accordingly, at all times TDR Master owed Plaintiff the following nondelegable duties of care a business invitee and overnight guest at the Trump Towers condominium;

   a. Of reasonable care to provide for her security and protect her from any reasonably foreseeable dangers including reasonably foreseeable criminal conduct.

   b. To manage the property and perform all services which it had undertaken gratuitously or for consideration including the task of providing security to deter criminal conduct reasonably and with due care.

   c. To ensure that its property was not being used to advertise unlicensed short term accommodations or vacation rental and to prevent the cabanas located in its common areas from being used as a temporary dwelling unit.

d. To ensure that any and all areas of the condominium which were being offered as a temporary dwelling, guest room, or accommodation were being offered in accordance with the laws of the State of Florida and Sunny Isles Beach.

e. To properly monitor and secure its common areas including the cabanas to prevent their unlawful use and deter foreseeable criminal conduct.

f. To exercise due care in the selection or retention of any independent contractors such as Firstservice Residential and Allied Universal, in that it was foreseeable that their failure to properly carry out their duties would result in foreseeable harm to third persons such as the Plaintiff.

104. At all times material TDR Master hired, retained, employed, or contracted with Firstservice Residential and Allied Universal to perform the foregoing nondelegable duties relating to the operation, management, maintenance, and security of the Trump Towers condominium.

105. Furthermore, at all times Firstservice Residential as a Florida Licensed Community Association Manager (L.C.A.M.), was at all times deemed to be acting as TDR Master's agent in managing and operating the Trump Towers Condominium pursuant to Florida Statutes 468.4334(1). Moreover, at all times TDR Master exercised direct, and persistent control concerning the daily activities, post orders, employees, and work performed by Firstservice Residential at the subject location.

106. Additionally, at all times Allied Universal was acting at the direction, instruction, and in the course and scope of its employment with its principal TDR Master in providing security, monitoring, and patrolling services at the Trump Towers condominium. Moreover, at all times TDR Master exercised direct, and persistent, control concerning the daily activities, post orders, employees, and work performed by Allied Universal at the subject location.

107.    Accordingly, TDR Master is vicariously liable for the negligent acts of First Service Residential and Allied Security which occurred during the discharging of TDR Master's nondelegable duties and in the course and scope of First Service Residential and Allied Security agency and employment for TDR Master, including but not limited to the following negligent acts and omissions:

a.   In regard to First Service Residential:

1)   Prior to Plaintiff being assaulted, Firstservice Residential allowed over 10 instances of code violations related to unauthorized short term rentals at the Trump Towers condominium.

2)   Failing enact proper security and property management protocols to prevent the ongoing illegal operation of short-term leases, vacation rentals, and unauthorized use of the property for hosting of short-term guests.

3)   Failing to prevent the use of the cabanas during prohibited hours and for the purpose of overnight stays on the premises.

4)   Failing to warn Plaintiff that Elbadramany intended to sexually assault the Plaintiff while she was staying with him as a guest at his condominium;

5)   Permitting Elbadramany to install hidden camera equipment in the cabanas for purpose of illegally recording the Plaintiff;

6)   Permitting Elbadramany to operate an unlicensed illegal short-term rentals at the Trump Towers Condominium.

7)   Permitting Elbadramany operate the cabanas on TDR Towers' premises for the purpose of hosting overnight guests in violation of TDR Towers' rules and regulations and in violation of Sunny Isles Beach Code of Ordinances Article VII

Section 265-35 *et seq.* which prohibits the rental or leasing of cabanas and/or their use as a dwelling unit.

8) Failing to prevent the cabanas located in Trump Towers common areas from being used for overnight stays and as temporary dwelling units.

108.   In regard to Allied Security:

1) Failing to ensure security post orders were followed;

2) Failing to ensure the presence of sufficient properly trained security personnel on the premises;

3) Failing to conduct routine security checks of the premises including the cabanas;

4) Failing enact proper security and property management protocols to prevent the ongoing illegal operation of short-term leases, vacation rentals, and unauthorized use of the property for hosting of short-term guests.

5) Failing to ensure Plaintiff's room was properly secured against intruders;

6) Failing to undertake reasonable security measures to deter criminal conduct including sexual assault on the premises;

7) Failing to render aid to the Plaintiff after she was sexually assaulted;

8) Failing to properly respond to Plaintiff's sexual assault, including documenting the incident, and investigating the allegations;

9) Failing to turn over evidence of Plaintiff's sexual assault to law enforcement investigating Plaintiff's allegations;

10) Failing to warn Plaintiff that her room contained hidden cameras which were recording her without her knowledge;

109.    Thus, TDR Master is vicariously liable for Firstservice Residential and Allied Universal's breach of its nondelegable duties of care owed to the Plaintiff and for all negligent acts which occurred in the course and scope of its agency relationship with Firstservice Residential and Allied Universal.

110.    As a direct and proximate result of the foregoing breach of duties and negligence Plaintiff was injured when she was battered and assaulted in the Trump Towers cabana by Elbadramany.

111.    As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages against TDR Master.

## COUNT IX
(Negligence – Firstservice Residential)

112.    Plaintiff repeats and realleges paragraphs 1-8.

113.    At all times material Firstservice Residential was hired as the property management company responsible for managing and operating all aspects of the residential condominium complex known as the Trump Towers Condominium in Sunny Isles Beach, Florida including its entrances, common areas, cabanas, and security.

114.    Throughout this time period Firstservice Residential held itself out as a Florida Licensed Community Association Manager (L.C.A.M.), property management company and assumed responsibility for managing and operating all aspects of the subject property as TDR Towers' agent,

including responsibilities relating to the maintenance of the property and instituting of reasonable security measures and regulations of short-term rental and security of the common areas.

115.     Accordingly, Firstservice Residential was charged with the duty to exercise the same reasonable care that a reasonably careful property management company would exercise under like circumstances in managing the Trump Towers Condominium.

116.     Furthermore, pursuant to Florida Statutes 468.4334(1), as a Florida Licensed Community Association Manager (L.C.A.M.) Firstservice Residential, was at all times deemed to be acting as TDR Master's agent in managing and operating the Trump Towers Condominium.

117.     At all times material Elbadramany was condominium unit owner and member of the TDR Towers Master condominium association.

118.     At all times material and since June of 2010, Elbadramany advertised his condominium at the Trump Towers for purposes of providing room and board to travelers via the Couchsurfing.com website and application, and use of the amenities.

119.     Elbadramany's Couchsurfing account contained numerous references from previous guests and stated clearly that he was a "verified member" of Couchsurfing who was currently accepting guests.

120.     Prior to the date of the subject incident beginning in approximately 2018, Firstservice Residential began receiving complaints from residents regarding suspected unregistered guests and unauthorized use of units as short-term vacation rentals.

121.     Furthermore, Firstservice residential was notified by the City of Sunny Isles Beach that short term rentals were to be regulated by city ordinance.

122.     At all times Firstservice Residential knew or should have known that Elbadramany was operating an unlicensed short term vacation rental in violation of Sunny Isles Beach Code of Ordinances

Article II Section 217 *et seq.* Or in the alternative was permitting Elbadramany to allow guests from Couchsurfing.com to reside at the Trump Towers with Firstservice Residential's approval.

123.   At all times Firstservice Residential knew or should have known that Elbadramany was using the cabanas which it monitored, and controlled to host overnight guests and during hours prohibited by TDR Towers' condominium's rules and regulations and Sunny Isles Beach Code of Ordinances Article II Section VI Section 265-35, prohibiting the use of cabanas as a dwelling unit.

124.   At all times Firstservice Residential was responsible for enforcing regulations, monitoring and controlling access to the common areas of the Trump Towers Condominium, including the cabanas located on the premises.

125.   At all times Firstservice Residential allowed the common areas including the cabanas to be used by outside guests of condominium owners and association members such as Elbadramany during hours prohibited by Trump Towers' condominium regulations and city ordinances.

126.   At all times Firstservice Residential further undertook to provide security on the premises of the Trump Towers Condominium for the purpose of ensuring the safety of the members of its condominium association and their guests.

127.   On or about June 18, 2021, Plaintiff arrived at Trump Towers Condominium and was checked into the reception as a guest of Elbadramany, and was provided with an access card for use of the amenities on the premises.

128.   Elbadramany, subsequently provided Plaintiff with access to a cabana located in the common areas of the Trump Towers, which contained a bed and bathroom to be used as temporary dwelling unit by the Plaintiff.

129.   At all times material Firstservice Residential through its employees knew or should have known that Elbadramany was operating and utilizing the cabanas to provide overnight accommodation in

violation of TDR Towers' regulations and City of Sunny Isles Beach ordinances prohibiting short-term rentals and overnight stays in cabanas; as Plaintiff was residing as a guest on its property specifically in the cabanas.

130.   Accordingly, Firstservice Residential owed Plaintiff a duty as the property manager of the premises which had been furnished for use of the Plaintiff as a hotel or temporary residence;

    a.   To prevent residents from advertising, operating, and maintaining unauthorized short term rentals and overnight accommodation on its premises.

    b.   To prevent the use of the cabanas during prohibited hours and for the purpose of overnight stays on the premises.

    c.   of reasonable care to provide for her security and protect her from any reasonably foreseeable dangers including reasonably foreseeable criminal conduct.

    d.   to manage the property and perform all services which it had undertaken gratuitously or for consideration including the task of providing security to deter criminal conduct reasonably and with due care.

131.   Firstservice Residential breached these duties of care by engaging the following acts and omissions;

    a.   Prior to Plaintiff being assaulted, Firstservice Residential allowed over 10 instances of code violations related to unauthorized short term rentals at the Trump Towers condominium.

    b.   Failing enact proper security and property management protocols to prevent the ongoing illegal operation of short-term leases, vacation rentals, and unauthorized use of the property for hosting of short-term guests.

    c.   Failing to prevent the use of the cabanas during prohibited hours and for the purpose of overnight stays on the premises.

d. Failing to warn Plaintiff that Elbadramany intended to sexually assault the Plaintiff while she was staying with him as a guest at his condominium;

e. Permitting Elbadramany to install hidden camera equipment in the cabanas for purpose of illegally recording the Plaintiff;

f. Permitting Elbadramany to operate an unlicensed illegal short-term rentals at the Trump Towers Condominium.

g. Permitting Elbadramany operate the cabanas on TDR Towers' premises for the purpose of hosting overnight guests in violation of TDR Towers' rules and regulations and in violation of Sunny Isles Beach Code of Ordinances Article VII Section 265-35 *et seq*. which prohibits the rental or leasing of cabanas and/or their use as a dwelling unit.

h. Failing to ensure security post orders were followed;

i. Failing to ensure the presence of sufficient properly trained security personnel on the premises;

j. Failing to conduct routine security checks of the premises including the cabanas;

k. Failing to ensure Plaintiff's room was properly secured against intruders;

l. Failing to undertake reasonable security measures to deter criminal conduct including sexual assault on the premises;

m. Failing to render aid to the Plaintiff after she was sexually assaulted;

n. Failing to properly respond to Plaintiff's sexual assault, including documenting the incident, and investigating the allegations;

o. Failing to turn over evidence of Plaintiff's sexual assault to law enforcement investigating Plaintiff's allegations;

p.  Failing to warn Plaintiff that her room contained hidden cameras which were recording her without her knowledge;

132.  At all times based on the history of prior criminal activity on the subject premises and the surrounding vicinity it was reasonably foreseeable that criminal conduct directed toward guests at the Trump Towers Condominium could occur. These prior instances of criminal activity which occurred and were reported to have occurred on the subject premises included but were not limited to:

a.  2020 – Assault.

b.  2020 - Battery

c.  2021 – Assault.

d.  2021 - Battery

133.  The foregoing acts, omissions, and breaches of duty by Firstservice Residential constituted negligence, gross negligence and willful disregard of the risk of death or high likelihood of injury by Firstservice Resdiential.

134.  As a direct and proximate result of the foregoing breach of duties and negligence Plaintiff was injured when she was battered and assaulted in the Trump Towers cabana by Elbadramany.

135.  As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages against Fistservice Residential.

## COUNT X
(Negligent Security – Allied Universal)

136. Plaintiff repeats and realleges paragraphs 1-8.

137. At all times material Allied Universal was hired as the security company responsible for providing security services for the residential condominium complex known as the Trump Towers Condominium in Sunny Isles Beach, Florida including its entrances, common areas, and cabanas.

138. Accordingly, Allied Universal assumed a nondelegable duty by operation of its contract to discharge its security services with reasonable care.

139. At all times material Elbadramany was condominium unit owner and member of the TDR Towers master condominium association.

140. At all times material and since June of 2010, Elbadramany advertised his condominium at the Trump Towers for purposes of providing room and board to travelers via the Couchsurfing.com website and application, and use of the amenities.

141. Elbadramany's Couchsurfing account contained numerous references from previous guests and stated clearly that he was a "verified member" of Couchsurfing who was currently accepting guests.

142. At all times Allied Universal knew or should have known that Elbadramany was operating an unlicensed short term vacation rental in violation of Sunny Isles Beach Code of Ordinances Article II Section 217 *et seq*. Or in the alternative Allied Universal was permitting Elbadramany to allow guests from Couchsurfing.com to reside at the Trump Towers with Allied Universal's approval.

143. At all times Allied Universal knew or should have known that Elbadramany was using the cabanas which it was responsible for monitoring and patrolling to host overnight guests and during hours prohibited by TDR Towers' condominium's rules and regulations and Sunny Isles Beach Code of Ordinances Article II Section VI Section 265-35, prohibiting the use of cabanas as a dwelling unit.

144. At all times Allied Universal was responsible for monitoring and controlling access to the common areas of the Trump Towers Condominium, including the cabanas located on the premises. This duty included complying with the post orders provided by TDR Master which required Allied Universal to patrol the pool and cabana areas of Trump Towers.

145. At all times Allied Universal allowed the common areas of Trump Towers including the cabanas to be used by outside guests of condominium owners and association members such as Elbadramany during hours prohibited by Trump Towers' condominium regulations and city ordinances.

146. On or about June 18, 2021, Plaintiff arrived at Trump Towers Condominium and was checked into the reception as a guest of Elbadramany, and was provided with an access card for use of the amenities on the premises.

147. Elbadramany, subsequently provided Plaintiff with access to a cabana located in the common areas of the Trump Towers, which contained a bed and bathroom to be used as temporary dwelling unit for the Plaintiff.

148. At all times material Allied Universal through its employees knew or should have known that Elbadramany was operating and utilizing the cabanas to provide overnight accommodation in violation of TDR Towers' regulations and City of Sunny Isles Beach ordinances prohibiting short-term rentals and overnight stays in cabanas, as Plaintiff was residing as a guest on its property specifically in the cabanas.

149. Furthermore on the date of the subject incident Allied Universal was charged with the duty of patrolling the cabanas at the Trump Towers condominium to ensure that no cabanas were being used overnight and that any cabana lights were turned off after midnight, in accordance with City of Sunny Isles Beach Ordinances and the Trump Towers condominium's rules and regulations.

150.     Accordingly, Allied Universal owed Plaintiff a duty as the security provider for the subject premises which had been furnished for use of the Plaintiff as a hotel or temporary residence;

e.  To prevent residents from advertising, operating, and maintaining unauthorized short term rentals and overnight accommodation on its premises.

f.  To carry out its post orders and fully patrol and inspect the common areas of Trump Towers including its cabanas.

g.  To prevent the use of the cabanas during prohibited hours and for the purpose of overnight stays on the premises.

h.  To observe, report, and if possible intercede to stop any criminal activity on the premises including any assault which was being perpetrated against the Plaintiff.

i.  of reasonable care to provide for her security and protect Plaintiff from any reasonably foreseeable dangers including reasonably foreseeable criminal conduct.

151.     Allied Universal breached these duties of care by engaging the following acts and omissions;

a.  Failing to carry out its post orders and fully patrol and inspect the common areas of Trump Towers including its cabanas.

b.  Failing to carry out its post orders and fully patrol and inspect the common areas of Trump Towers including its cabanas.

c.  Failing to prevent the use of the cabanas during prohibited hours and for the purpose of overnight stays on the premises.

d.  Failing to observe, report, and if possible intercede to stop any criminal activity on the premises including any assault which was being perpetrated against the Plaintiff.

q.  Failing enact proper security protocols to prevent the ongoing illegal operation of short-term leases, vacation rentals, and unauthorized use of the property for hosting of short-term guests.

r.  Failing to prevent the use of the cabanas during prohibited hours and for the purpose of overnight stays on the premises.

s.  Failing to warn Plaintiff that Elbadramany intended to sexually assault the Plaintiff while she was staying with him as a guest at his condominium;

t.  Permitting Elbadramany to install hidden camera equipment in the cabanas for purpose of illegally recording the Plaintiff;

u.  Permitting Elbadramany to operate an unlicensed illegal short-term rentals at the Trump Towers Condominium.

v.  Permitting Elbadramany operate the cabanas on TDR Towers' premises for the purpose of hosting overnight guests in violation of TDR Towers' rules and regulations and in violation of Sunny Isles Beach Code of Ordinances Article VII Section 265-35 *et seq.* which prohibits the rental or leasing of cabanas and/or their use as a dwelling unit.

w.  Failing to ensure security post orders were followed by its employees;

x.  Failing to ensure the presence of sufficient properly trained security personnel on the premises;

y.  Failing to conduct routine security checks of the premises including the cabanas;

z.  Failing to ensure Plaintiff's room was properly secured against intruders;

aa. Failing to undertake reasonable security measures to deter criminal conduct including sexual assault on the premises;

bb. Failing to render aid to the Plaintiff after she was sexually assaulted;

cc. Failing to properly respond to Plaintiff's sexual assault, including documenting the incident, and investigating the allegations;

dd. Failing to turn over evidence of Plaintiff's sexual assault to law enforcement investigating Plaintiff's allegations;

ee. Failing to warn Plaintiff that her room contained hidden cameras which were recording her without her knowledge;

152. At all times based on the history of prior criminal activity on the subject premises and the surrounding vicinity it was reasonably foreseeable that criminal conduct directed toward guests at the Trump Towers Condominium could occur. These prior instances of criminal activity which occurred and were reported to have occurred on the subject premises included but were not limited to:

a. 2020 – Assault.

b. 2020 - Battery

c. 2021 – Assault.

d. 2021 - Battery

153. As a direct and proximate result of the foregoing breach of duties and negligence Plaintiff was injured when she was battered and assaulted in the Trump Towers cabana by Elbadramany.

154. As a direct and proximate result of the foregoing conduct, Plaintiff suffered bodily injury, mental anguish, and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, aggravation of a previously existing condition. The amount of these losses and damages are in excess of $75,000.00, are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury and judgment for all available damages against Allied Universal.

CERTIFICATE OF SERVICE

I hereby certify that on Sep. 21 2022, a true copy of the foregoing was served by E-mail and CM/ECF E-service on all counsel or parties of record on the service list:

Counsel for Defendant, Elbadramany:
JONES WALKER LLP
Edward R. Shohat
Monique Garcia
David S. Weinstein
201 S. Biscayne Blvd.
Thirtieth Floor
Miami, Florida 33131
Telephone: 305-679-5700
Facsimile: 305-679-5710
eshohat@joneswalker.com
mgarcia@joneswalker.com
dweinstein@joneswalker.com
calvarez@joneswalker.com

Attorneys for Defendant TDR Towers Master Association, Inc.:
LUKS, SANTANIELLO, PETRILLO, COHEN & PETERFRIEND
DANIEL J. SANTANIELLO
VALERIE R. EDWARDS
DENISE M. STOCKER
301 Yamato Road, Suite 4150
Boca Raton, FL 33431
Telephone: (561) 893-9088
Facsimile: (561) 893-9048
vedwards@insurancedefense.net
LUKSBOCA-Pleadings@LS-Law.com
LUKSMIA-Pleadings@LS-Law.com
JMariotti@insurancedefense.net

Co-Counsel for Plaintiff:
CARPENTER & ZUCKERMAN
John P. Kristensen (Pro Hac Vice)
Pejman Ben-Cohen (Pro Hac Vice)
Megan Gyongyos (Pro Hac Vice)
kristensen@cz.law

pej@cz.law
mgyongyos@cz.law
8827 W. Olympic Blvd.
Beverly Hills, California 90211
(310) 273-1230 – TELEPHONE


By:

FLORIDA LEGAL, LLC
Attorneys for Plaintiff
12550 Biscayne Boulevard, Suite 405
North Miami, Florida 33181
(t) (305) 901-2209
(f) (786) 870-4030

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
E-Mail: ray.dieppa@floridalegal.law




By:

FLORIDA LEGAL, LLC
Attorneys for Plaintiff
12550 Biscayne Boulevard, Suite 405
North Miami, Florida 33181
(t) (305) 901-2209
(f) (786) 870-4030

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
E-Mail: ray.dieppa@floridalegal.law