UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-20525-BLOOM/Otazo-Reyes

ELENA SVISTINA,

    Plaintiff,

v.

MARK FADEL ELBADRAMANY, *et al.*,

    Defendants.

_____/

**ORDER ON MOTION TO DISMISS COUNTERCLAIMS**

**THIS CAUSE** is before the Court upon Plaintiff Elena Svistina's Motion to Dismiss Defendant Mark Elbadramany's Counterclaim, ECF No. [137] ("Motion"), filed on October 12, 2022. Elbadramany filed a Response, ECF No. [147], to which Svistina filed a Reply, ECF No. [156]. The Court has carefully reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.    BACKGROUND**

On September 21, 2022, Svistina filed her Amended Complaint. ECF No. [121]. Therein, she alleges in relevant part that Elbadramany lured her to a cabana at the Trump Towers Condominium in Sunny Isles, Florida, where he sexually assaulted her and videorecorded her without her knowledge or consent. *See generally id.*

On October 6, 2022, Elbadramany responded to Svistina's Amended Complaint with a combined Answer, Affirmative Defenses, and Counterclaims. ECF No. [135] ("Counterclaims"). In his Counterclaims, Elbadramany alleges that Svistina chose to stay in Elbadramany's cabana

because she found him attractive, he was wealthy, and "thought she could lure him into an encounter and then attempt to defraud and extort him by misusing the criminal and civil justice system." *Id.* ¶¶ 24-26. Elbadramany's Counterclaims contain the following additional allegations:

Upon Svistina's arrival at the cabana on June 18, 2021, Elbadramany pointed out to Svistina a security camera that recorded activity within the cabana. *Id*. ¶¶ 27-31. The two sat on a massage table and, after chatting for approximately 10 minutes, Svistina offered Elbadramany a massage, which he accepted. *Id.* ¶¶ 40, 42. After massaging Elbadramany for approximately 36 minutes, Svistina requested a massage from Elbadramany, which he provided. *Id*. ¶¶ 52-53. After 16 minutes, the massage ended, with no intimation "that anything improper had occurred." *Id*. ¶¶ 59-61. Elbadramany then stored the massage table, prepared a Murphy bed for Svistina, and exited the premises. *Id*. ¶¶ 62-63.

Around 6:20 p.m. the following evening, June 19, Elbadramany alleges that Svistina called the Sunny Isles Beach police. *Id.* ¶ 68. Prior to the police's arrival, Svistina stored the Murphy bed, brought out the massage table, "grabbed, touched, and tampered with [the] security camera, the smoke detector, and took multiple pictures and videos of the cabana." *Id*. ¶ 70. She then gave a false statement to the police, claiming that Elbadramany assaulted her. *Id.* ¶¶ 72, 76-79.

Svistina's "malicious lies to the police and to the State Attorney's office" led to Elbadramany being arrested and charged with battery. *Id*. ¶ 90. Svistina was "interviewed at least twice by two different Assistant State Attorneys." *Id.* ¶ 91. The criminal case was then "dropped by nolle prose" after Elbadramany's lawyers "presented incontrovertible evidence of the truth to the State." *Id*. ¶ 93.

Elbadramany claims that both the closed criminal case and the instant civil case "are nothing more than Ms. Svistina's attempt to manipulate the judicial system in order to obtain a

financial gain . . . based on lies, fraud, and deceit." *Id*. ¶ 94. He accuses Svistina of "abusing the civil court system and this country's criminal process as extortionate vehicles." *Id*. ¶ 95. Elbadramany incorporates the above allegations into two Counterclaims: Malicious Prosecution (Count 1), and Abuse of Process (Count 2). *Id.* at 30-32.

On October 12, 2022, Svistina filed her Motion to Dismiss. ECF No. [137]. Therein, she argues that both of Elbadramany's Counterclaims are barred because they are directed against Svistina's actions in the present proceeding; Elbadramany's abuse of process claim fails to allege a misuse of judicial process; both of Elbadramany's claims are barred by Florida's litigation privilege; Elbadramany's malicious prosecution claim is barred because Svistina acted in good faith and there was probable cause to charge Elbadramany; and Elbadramany's request for attorneys' fees should be stricken. *See generally id.* In the alternative, Svistina requests that Elbadramany's Counterclaims "be severed or abated." *Id*. at 11.

## II. LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a claim may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If

the facts satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *Id.* at 556.

When reviewing a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."). While the Court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).

### III. DISCUSSION

As noted above, Elbadramany has pleaded two Counterclaims: Malicious Prosecution (Count I), and Abuse of Process (Count II). *See generally* ECF No. [135]. Both Counterclaims rely on the same underlying set of facts. Before addressing Svistina's specific arguments, the Court analyzes the two related claims at issue.

"Although abuse of process and malicious prosecution are two separate and distinct torts, they have the common element of an improper purpose in the use of legal process, and there are many cases in which they overlap and either will lie." *Verdon v. Song*, 251 So. 3d 256, 258 (Fla. 5th DCA 2018) (internal quotation marks omitted). "However, these torts serve different purposes as the tort of malicious prosecution is concerned with maliciously causing process to issue,

4

whereas the tort of abuse of process is concerned with the improper use of process after it issues, for some wrongful and unlawful object or collateral purpose." *Id*. (citation and internal quotation marks omitted). The Third District Court of Appeal sets forth the following example distinguishing the two torts:

> Thus if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process.

*Cline v. Flagler Sales Corp.*, 207 So. 2d 709, 711 (Fla. 3d DCA 1968). In some situations, both torts may apply to the same set of events:

> [I]f the defendant justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only [i.e. malicious prosecution]. It is not malicious abuse [i.e. abuse of process] because jailing is the purpose for which criminal process was intended. If the defendant has process issued based on the truthful statement that the plaintiff solicited burglary and then uses the threat of prosecution for purposes of extortion, this is malicious abuse only. Finally, if . . . the defendant has process served based on false statements and uses threat of prosecution for purposes of extortion, both torts will lie.

*Verdon*, 251 So. 3d at 258 (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1219 (3d Cir. 1977). With these distinctions in mind, the Court turns to the arguments within Svistina's Motion to Dismiss.

### A. Malicious Prosecution and Abuse of Process as Counterclaims

Svistina argues that both of Elbadramany's Counterclaims must be dismissed because they improperly seek to recover against Svistina for filing the instant civil lawsuit, which Florida law purportedly forbids. ECF No. [137] at 2 (citing *Blue v. Weinstein*, 381 So. 2d 308, 311 (Fla. 3d DCA 1980)).

As to malicious prosecution, Svistina's interpretation of Florida law is correct. Because a necessary element of malicious prosecution is the "termination of the action in favor of the

5

plaintiff," it necessarily follows that such a claim cannot be brought as a counterclaim "when directed against the filing of some or all of the counts in the pending main action[.]" *Blue*, 381 So. 2d at 381.

However, Elbadramany's Count I for malicious prosecution is directed solely against the terminated criminal case, not the instant civil proceeding. In that Count, Elbadramany solely references "the original criminal proceeding" against him. ECF No. [135] ¶ 99. He alleges that the criminal case was predicated on Svistina's "lies, fraud, deceit, and serious omissions" and it terminated in his favor. *Id*. ¶¶ 101-102. He demands "judgment for fees and costs related to his defense in the State criminal case." *Id.* at 31. Unlike Count II for abuse of process, Count I for malicious prosecution does not refer to the civil case or seek damages related to his civil defense. *Id.* at 31-32. Accordingly, the Court rejects Svistina's contention that Elbadramany's claim of malicious prosecution is improperly directed against this pending civil action.

As for abuse of process, Svistina fails to convince that such a claim "may not be brought as a counterclaim when directed against the filing of some or all of the counts in the pending main action[.]" ECF No. [137] at 2 (quoting *Blue*, 381 So. 2d at 311). The primary case Svistina cites for that proposition says precisely the opposite: "An abuse of process claim may henceforth be brought as a counterclaim when directed against process served in the pending main action[.]" *Blue*, 381 So. 2d at 310-11.

Svistina additionally cites two federal district court decisions, which stated "malicious prosecution or abuse of process cannot be maintained in a pending action." ECF No. [137] ¶ 4 (quoting *Lee v. McCarthy*, No. 17-cv-60471, 2017 WL 11684925, at *4 (S.D. Fla. Sept. 18, 2017) and *Bates v. Cook, Inc.*, 615 F. Supp. 662, 670 (M.D. Fla. 1985)). But Svistina's reliance on *Lee* and *Bates* is misplaced for two reasons. First, both cases were exclusively analyzing claims of

malicious prosecution, so their statements about abuse of process were dicta. Second, both *Lee* and *Bates* were quoting a Third District Court of Appeal case that is no longer good law on the abuse of process issue. *See Lee*, 2017 WL 11684925, at *4 (quoting *Bates*, 615 F. Supp. at 670 (quoting *Bieley v. duPont, Glore, Forgan, Inc.*, 316 So. 2d 66 (Fla. 3d DCA 1975))). That Third District Court of Appeal decision – *Bieley* – was explicitly rejected by *Blue*, which clarified that "[a]n abuse of process claim may henceforth be brought as a counterclaim when directed against process served in the pending main action[.]" *Blue*, 381 So. 2d at 310-11.

Accordingly, the Court rejects Svistina's contention that Florida law prohibits an abuse of process claim from being pleaded as a counterclaim in a pending action. *See, e.g.*, *Kodsi v. Branch Banking & Tr. Co.*, No. 15-cv-81053, 2018 WL 830117, at *4 (S.D. Fla. Feb. 12, 2018) ("[I]n contrast to a claim for malicious prosecution, a claim for abuse of process may be brought as a counterclaim in the main action.").

**B. Whether Elbadramany's Abuse of Process Claim Sufficiently Alleges Misuse of Judicial Process**

Svistina argues that "no claim for abuse of process lies where a party has made use of a judicial process for its intended purpose." ECF No. [137] at 3. She argues that Elbadramany's Counterclaim for abuse of process fails to state an impermissible purpose.

The Eleventh Circuit has indicated that an abuse of process claim in Florida consists of three elements: "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's action." *EMI Sun Village, Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019).

"For the cause of action to exist, there must be a use of the process for an immediate purpose other than that for which it was designed." *Scozari*, 546 So. 2d at 751. "There is no abuse

of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose." *Id.*; *see also In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017) ("The fact that a party may be motivated by incidental or concurrent benefits of the use of process is not sufficient to constitute an abuse."). The Eleventh Circuit has instructed that the inquiry turns on whether the defendant used the "criminal or civil legal process against another *primarily* to accomplish a purpose for which it was not designed." *Id.* (emphasis added) (quoting *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984)).

Elbadramany's abuse of process claim is directed against Svistina's actions in both the open civil case and the closed criminal case. The Court agrees with Svistina that Elbadramany has failed to state an abuse of process claim with respect to the civil case. Elbadramany alleges that Svistina initiated both cases for "vengeance" and "profit." ECF No. [135] ¶¶ 107-08. But Svistina's alleged vengeance, like "maliciousness . . . action itself is actually irrelevant to the tort of abuse of process." *Cazares v. Church of Scientology of Cal., Inc.*, 444 So.2d 442, 444 (Fla. 5th DCA 1983). And recovering "profit" – that is, damages – is a permissible use of the civil legal system, even if a plaintiff's allegations are based on lies. *See, e.g.*, *Chevaldina v. Ctr. for Ind'l Rights*, 20-cv-24690, 2011 WL 8776795, at * 16 (S.D. Fla. 2021 Dec. 15, 2021) (filing a false affidavit to win a civil case is not an abuse of process). Accordingly, Elbadramany has failed to allege that Svistina has used the civil legal process for "a purpose for which it was not designed." *Scozari*, 546 So. 2d at 751.

However, the Court arrives at a different result with respect to the criminal case, which Elbadramany alleges Svistina attempted to use as an "extortionate vehicle[ ]." ECF No. [135] ¶ 95. The purpose of the criminal justice system is not to force a defendant to settle in a parallel civil

8

case. *See, e.g.*, *Thomson McKinnon Secs., Inc. v. Light*, 534 So. 2d 757, 760 (Fla. 3d DCA 1988) (indicating that the purpose of criminal process is to remedy criminal behavior). *Scozari*, 546 So. 2d at 752. As the Third District Court of Appeal reasoned:

> If there was a reasonable basis in law and fact to initiate the judicial proceedings, then these processes were justified even though they may have served some other collateral purpose. However, if there was no reasonable basis in law and fact to bring the action . . . and this was done without any reasonable justification under the law and to force or compel the appellant to resolve some custody dispute, induce the appellant to pay money, or tie up the appellant's property, then there has been an abuse of process.

*Id.* Here, Elbadramany has alleged precisely the situation described in *Scozari*: Svistina allegedly initiated a criminal case without basis in law or fact to induce Elbadramany to settle a civil case. ECF No. [135] ¶¶ 107-08; *see also Verdon*, 251 So. 3d at 259 (abuse of process claim sufficiently alleged with allegations that "Wife attempted to extort Husband by using the pending criminal proceedings to gain use of his credit card."). The Court concludes that Elbadramany has sufficiently alleged that Svistina attempted to use the criminal legal process "primarily to accomplish a purpose for which it was not designed." *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017) (emphasis added) (quoting *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984)).

The Court is unconvinced by Svistina's argument that relies on *Blanck v. City of Altamonte Springs*, No. 11-cv-293, 2011 WL 3516071, at * 3 (M.D. Fla. Aug. 11, 2011). ECF No. [137] at 4. As Svistina correctly argues, *Blanck* concluded that "[m]erely participating in a criminal prosecution and filing a civil claim based on the same facts is not abuse of process," even if the participator had "an ulterior motive of making it more difficult for Plaintiff to respond to their civil suit[.]" *Blanck*, 2011 WL 3516071, at *3 (quotation marks omitted). But the *Blanck* court indicated that the result could be different if there was not "a reasonable basis in law and fact to initiate the

judicial proceedings," which was not alleged in that case. *Id.* (quoting *Scozari*, 546 So. 2d at 752.) Unlike the plaintiff in *Blanck*, Elbadramany has alleged sufficient facts to lead to the conclusion that the criminal case against him resulted from Svistina's "lies to the police" and not a reasonable basis in law and fact. ECF No. [135] ¶ 90. He has sufficiently alleged that Svistina has attempted to use the criminal legal process as an extortionate vehicle.

### C. Florida's Litigation Privilege

Svistina's third argument is that Elbadramany's claims are barred by Florida's litigation privilege. ECF No. [137] at 5. The litigation privilege "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004).

Pursuant to Florida's litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . , so long as the act has some relation to the legal proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994).

As to Count I, the Florida Supreme Court has rejected Svistina's contention "that the litigation privilege protects a litigant from a claim of malicious prosecution." *Debrincat v. Fischer*, 217 So. 3d 68, 70-71 (Fla. 2017). Svistina argues, unconvincingly, that *Debrincat's* holding "has been distinguished and limited in the Southern District of Florida." ECF No. [156] at 6 (citing *Chevaldina* 2021 WL 8776795). But *Chevaldina* did not "limit[ ]" *Debrincat* – nor could it, since *Chevaldina* was simply applying Florida law in a diversity case. *See Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) (a federal court sitting in diversity must adhere to the state court's decisions "whether or not the federal court agrees with the reasoning on

which the state court's decision is based or the outcome which the decision dictates."). *Chevaldina* merely distinguished claims of abuse of process, which are subject to the litigation privilege, from claims of malicious prosecution, which are not. 2021 WL 8776795 at *15 (citing *Debricat*, 217 So. 3d at 68). As such, the litigation privilege does not apply to Svistina's claim of malicious prosecution.

By contrast, the litigation privilege applies to actions for abuse of process. *EMI Sun Village*, 779 F. App'x 635. The Court further agrees with Svistina that the litigation privilege protects her from liability for her actions in the civil case. *Id.* at 635-36. Even assuming that Svistina has made false statements or submitted fraudulent documents in the civil case, such conduct "still occurred during 'a judicial proceeding'" and is covered by the litigation privilege. *Id.* That constitutes an additional and insurmountable infirmity with respect to Elbadramany's attempt to assert an abuse of process claim related to Svistina's behavior in the present civil case.

However, the absolute litigation privilege does not extend to false statements made during a police investigation prior to initiation of the criminal proceeding. *See Fridovich v. Fridovich*, 598 So. 2d 65, 68 (1992); *see also Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Tr. Co*. 810 So. 2d 996 (Fla. 4th DCA 2002). In *American National*, the Fourth District Court of Appeal considered allegations that, "in order to extort a settlement and put plaintiff out of business, the defendants conspired to maliciously give false information to law enforcement authorities resulting in [the plaintiff] being wrongfully arrested, jailed, and charged with crimes." *Id*. at 998. The *American National* court concluded that "[t]hese allegations, if proved, would not be protected by the absolute litigation privilege," but rather the defendants "would enjoy at most a qualified privilege, which could be overcome by proof that false information was given to law enforcement authorities with the intent to injure plaintiff." *Id*. The Court concludes that *American National* is

11

squarely on point and indicates that Svistina's allegedly false statements to the police are not covered by the absolute litigation privilege.

Svistina states that *American National* was "distinguished and superseded by the Eleventh Circuit in *Jackson*, 372 F.3d at 1276-77, wherein the Eleventh Circuit made clear that the litigation privilege applied to conduct which was part of the judicial process." ECF No. [156] at 4. But *Jackson* cannot supersede a Florida case applying Florida law. *See Silverberg*, 710 F.2d at 690 (explaining federal courts' duty to adhere to state court decisions when applying state law). As to Svistina's argument that *Jackson* "distinguished" *American National* in some relevant way, it did not. *Jackson* merely held that the allegations within that case – relating to defendants' conduct during settlement negotiations – were unlike the defendants' conduct in *American National*, which involved maliciously giving false information to law enforcement authorities. *Jackson*, 372 F.3d at 1277. That distinction is irrelevant because Elbadramany's Counterclaim alleges precisely the situation presented by *American National*: false accusatorial statements to law enforcement authorities to extort a settlement from the Defendant. The Florida courts have indicated that such statements are not protected by the litigation privilege.

**D. Good Faith and Probable Cause**

Svistina additionally argues that Elbadramany's claim for malicious prosecution must be dismissed because there was probable cause to arrest Elbadramany for misdemeanor battery. ECF No. [137] at 8. "It is well settled that in an action to recover damages for malicious prosecution where . . . the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury." *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008); *see also Hartman v. Moore*, 547 U.S. 250, 265 (2006) (noting that probable

cause will be "an evidentiary issue in practically all such cases"). Elbadramany's Counterclaims contain sufficient allegations to create a factual dispute as to the existence of probable cause.[1]

Relatedly, Svistina argues that Elbadramany's Counterclaims are barred because, to the extent Svistina made false statements to the police and prosecutors, she made them "in good faith." ECF No. [137] at 7. Whether Svistina acted in good faith or with malice is a factual issue that a jury must decide. *Williams*, 297 F. App'x at 947.

### E. Elbadramany's Request for Attorneys' Fees

Svistina's final dismissal argument is that Elbadramany's "claim for attorneys' fees should be stricken." ECF No. [137] at 10. Svistina asserts, without citation to legal authority, that "the torts of abuse of process and malicious prosecution do not permit for recovery of such damages." *Id*.

In Response, ECF No. [147] at 18, Elbadramany has provided abundant authority establishing that "[a]ttorneys' fees can . . . be recoverable as an element of damages with respect to certain intentional malicious torts such as malicious prosecution . . . and abuse of process." *Ratunaman v. Sanchez*, No. 09-cv-22937, 2010 WL 11602270, at *8 (S.D. Fla. May 5, 2010) (citing *Quality Holdings of Fla., Inc. v. Selective Invs., IV, LLC*, 25 So. 3d 34, 37 n. 1 (Fla. 4th DCA 2009); *see also Mee Indus. v. Dow Chem. Co.*, No. 05-cv-1520, 2018 WL 2561896, at *2 (M.D. Fla. June 25, 2008) ("In the context of a malicious prosecution suit, there is no basis for treating previously incurred attorney's fees as anything other than the more traditional forms of damages."); *Tidwell v. Witherspoon*, 21 Fla. 359 (1885) (in an action for malicious prosecution, "the plaintiff is entitled to recover damages . . . for the expenses of his defense.").

Svistina's request to strike Elbadramany's request for attorneys' fees is denied.

---

[1] The Court declines Svistina's invitation to consider extraneous documents and determine the existence of probable cause at this stage. *See* ECF No. [137] at 10.

### F. Severance

In the alternative to dismissal, Svistina argues that Elbadramany's Counterclaims should be severed pursuant to Federal Rule of Civil Procedure 21. ECF No. [137] at 11. Svistina argues that evidence of the State's decision to drop the criminal charges against Elbadramany – a necessary component of Elbadramany's malicious prosecution claim – would unduly prejudice Svistina in the main action. *Id.* at 12-13.

Elbadramany responds that "the counterclaims are derived from the same events alleged in the amended complaint," so "it would be a waste of judicial resources and economy to sever these counterclaims[.]" ECF No. [147] at 20.

The Court agrees with Elbadramany that severing would certainly not be in the interest of judicial economy, since Svistina's claims and Elbadramany's counterclaims "arise from the same transaction or occurrence," and they share the same core questions of fact. *Nation Motor Club, Inc. v. Stonebridge Cas. Ins. Co.*, No. 10-cv-81157, 2013 WL 6713567, at * 8 (S.D. Fla. May 20, 2013). That is, the claims and counterclaims ultimately turn on whether a jury believes Svistina's or Elbadramany's version of the events that occurred in the cabana in 2021.

On the other hand, Svistina has cited authority for the proposition that her main case would be prejudiced by the introduction of evidence establishing that the criminal case against Elbadramany was dropped. ECF No. [137] at 12-13 (citing *inter alia Aim Recycling of Florida, LLC v. Metals USA, Inc.*, No. 18-cv-60292-BLOOM, 2020 WL 236719, at *4 (S.D. Fla. Jan. 15, 2020) and *Eggers v. Phillips Hardware Co.*, 88 So. 2d 507 (1956)). However, those cases did not precisely address the present situation. In *Aim Recycling*, for example, the court reasoned that, in a civil suit, the evidence relating to the Department of Justice's criminal investigation against a civil defendant "would be highly prejudicial and immaterial" in a civil case. 2020 WL 236719 at

*4. Here, by contrast, while the potential for prejudice exists, there is no question that the termination of the criminal proceeding is material to Elbadramany's malicious prosecution claim.

Ultimately, the decision whether to sever will require a careful and wholistic evaluation of the evidence in this case and the foreseeable impact on the jury of the evidence at issue. The Court is unable to conduct such an evaluation at the present motion to dismiss stage and concludes that it is in the interest of "judicial economy" and "case management" to defer this issue for later determination. *Schwartz v. Dex Media, Inc.*, No. 18-cv-105, 2018 WL 2094962, at * 2 (M.D. Fla. May 7, 2018) (internal quotation marks omitted). Svistina's motion to sever is denied without prejudice to Svistina renewing it at the summary judgment stage.

Lastly, Svistina argues that the Counterclaims' repeated references to Svistina's Russian citizenship and immigration status are unfairly prejudicial. ECF No. [137] at 12-13. Elbadramany has not responded to this argument. *See generally* ECF No. [147]. The Court agrees with Svistina that her immigration status and Russian citizenship have no apparent relation to this case, and the Counterclaims' repeated references to those facts could only cause undue prejudice.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Svistina's Motion, **ECF No. [137]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Elbadramany's Counterclaims, incorporated within **ECF No. [135]**, are dismissed without prejudice.

3. **No later than January 17, 2023**, Elbadramany shall file Amended Counterclaims that:

    a. Consists only of Counterclaims and does not include an Answer or Affirmative Defenses;

    b.  Omits all references to Svistina's alleged misuse of the civil court system, *see, e.g.*, ECF No. [135] ¶¶ 95, 105;

    c.  Omits references to the parties' citizenship outside of the "Parties" section, *see, e.g.*, *id.* ¶¶ 94, 108;

    d.  Otherwise remains unchanged.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 3, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record