IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
[CIVIL]

CASE NO.: 22-cv-20525-BLOOM/Otazo-Reyes

ELENA SVISTINA,

  Plaintiff/Counter-Defendant,

vs.

MARK ELBADRAMANY,
*et al*,

  Defendant/Counter-Plaintiff.

_____/

## DEFENDANT MARK ELBADRAMANY'S AMENDED COUNTERCLAIMS

Defendant, Mark Elbadramany ("Mr. Elbadramany" or "Defendant"), by and through undersigned counsel files his Amended Counterclaims pursuant to this Court's Order (Dkt. 202) and avers as follows:

## AMENDED COUNTERCLAIMS AGAINST ELENA SERGEYEVNA SVISTINA

Counterclaimant, Mark Elbadramany, ("Mr. Elbadramany"), by and through counsel, for his Counterclaims against Counterclaim Defendant, Elena Sergeyevna  Svistina ("Ms. Svistina"), states and alleges as follows:

## PARTIES

1. Mr. Elbadramany, now is, and at all times relevant to this action was, a resident and citizen of the State of Florida.

#100876027v1

2.      On information and belief, Ms. Svistina alleges that she is now, and at all times relevant to this action was, a Russian citizen and Russian national living in California. (See DE 19-2, Declaration by Ms. Svistina).

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action based upon complete diversity pursuant to 28 U.S.C. § 1332 because the parties to this action are citizens of different countries, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5.      Pursuant to the requirements of 28 U.S.C. § 2201 and Article Ill, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## FACTUAL ALLEGATIONS

### THE CONSENSUAL ENCOUNTER

6.      Mr. Elbadramany incorporates his statements and allegations in Paragraphs 1-79 of his answer to the amended complaint (DE 135) as if fully set forth herein.

7.      On or around June 18, 2021, Ms. Svistina messaged Mr. Elbadramany on the Couchsurfing messaging application and asked for a stay with Mr. Elbadramany. She asked to stay from June 18 to June 21, 2021.

8.      Mr. Elbadramany texted back that he could host her from June 18 to June 20 or June 21, 2021

#100876027v1

9.    Mr. Elbadramany asked where she was at that moment, and she said she was already in South Beach, Florida.

10.    Ms. Svistina asked Mr. Elbadramany where he lived and that she loved his jet skiing pictures.

11.    Mr. Elbadramany stated he may be able to take her jet skiing on Sunday (i.e. June 20, 2021) but he would have to see.

12.    Mr. Elbadramany offered, and Ms. Svistina agreed, to stay at his cabana studio at Trump Tower I.

13.    She then asked what was the latest time she could show up that night on June 18, 2021. She stated that she wanted to see if she had enough time to go back to her hotel and pack her bags.

14.    Mr. Elbadramany texted that she could arrive at around 11 pm latest.

15.    She asked if she had to bring towels or bed sheets, and Mr. Elbadramany said that she did not.

16.    Mr. Elbadramany stated she could also arrive the next day, June 19, 2021 before noon or after 8 pm.

17.    Ms. Svistina stated that she was excited to stay in his cabana studio, and that he would be her "first friend in Miami. :)" She stated she would let him know if it made sense to go over to him later that night, or wait until the morning.

18.    Ms. Svistina decided to meet Mr. Elbadramany late that night, rather than wait until the next morning.

#100876027v1

19.     Upon information and belief, Ms. Svistina went back to her hotel in South Beach, Florida and packed her belongings. She ordered an Uber from South Beach to Sunny Isles Beach on the night of June 18, 2021.

20.     Ms. Svistina arrived close to 11 pm on the night of June 18, 2021 at TDR Tower I Sunny Isles Beach, Florida where the cabana studio is located.

21.     Ms. Svistina asked for his number and he gave it to her.

22.     Mr. Elbadramany met Ms. Svistina in the lobby area of Tower 1 of the Trump Tower Condominium.

23.     Mr. Elbadramany helped carry Ms. Svistina's luggage and showed her to the cabana studio at around 11:05 pm on June 18, 2021.

24.     Upon information and belief, Ms. Svistina chose to stay with Mr. Elbadramany, a complete stranger, because she was attracted to him based on the images she saw on Couchsurfing.

25.     Upon information and belief, Ms. Svistina chose to stay with Mr. Elbadramany, a complete stranger, who she believed was a successful and wealthy man living in a fancy oceanfront condominium.

26.     Upon information and belief, Ms. Svistina chose to stay with Mr. Elbadramany, a complete stranger, because she thought she could lure him into an encounter and then attempt to defraud and extort him by misusing the criminal justice system.

27.     Upon entering the studio cabana, Mr. Elbadramany showed her the space, the bathroom, and the Eufy security camera. Mr. Elbadramany even walked over and pointed to and touched the camera showing it to Ms. Svistina. Ms. Svistina smiled at the camera.

28.     Next to the Eufy doorbell camera on the shelf was a decal sticker by Eufy notifying that 24/7 monitoring was ongoing.

29.     Mr. Elbadramany explained to Ms. Svistina that the Eufy camera was a motion-sensored security camera. He explained that he used the cabana to house his electronic equipment, was a place to work, and occasionally to host guests.

30.     Ms. Svistina acknowledged the presence of the security camera, understood its function, and smiled directly into the camera.

31.     Ms. Svistina did not ask to have the camera turned away or turned off.

32.     Mr. Elbadramany went to the small fridge that was inside the cabana and she followed. He handed her a cold water bottle that she accepted. Mr. Elbadramany took a cold water bottle for himself.

33.     Ms. Svistina made herself comfortable by sitting on the massage table.

34.     The parties chatted pleasantly for about four minutes while Ms. Svistina sat on the massage table, and Mr. Elbadramany was standing nearby.

35.     After standing for about four minutes, Mr. Elbadramany sat down at the other end of the massage table holding his water bottle. In between them was her water bottle and her purse.

36.     The parties sat on the massage table together and chatted for about another five minutes. Mr. Elbadramany made her laugh and they had an easy-going conversation.

37.     During this conversation, the Eufy security camera was directed at the parties just a few feet away from where they sat on the massage table, and had circular lights that brightly illuminated in operation.

38.     When the camera was in function it was clearly visible due to the bright illuminating lights and the proximity to Mr. Elbadramany and Ms. Svistina.

39.     Ms. Svistina was at ease and comfortable at all times during this conversation, even laughing and making jokes.

#100876027v1

40.     At no time during this 10-minute conversation did the parties touch in any manner, but got to know each other.

41.     Ms. Svistina was very forward with Mr. Elbadramany asking him about his source of wealth, and asked him to teach her how to make money by trading in stocks, securities and in cryptocurrency.

42.     Ms. Svistina then offered Mr. Elbadramany a massage, which he accepted.

43.     Upon acceptance, Ms. Svistina took her purse and placed it on a table in order to clear the massage table for Mr. Elbadramany.

44.     Mr. Elbadramany undressed down to his underwear and lay face-down underneath a brown blanket which covered his body from the middle of his back to his toes.

45.     Ms. Svistina only massaged Mr. Elbadramany on exposed skin, meaning his upper back and shoulders.

46.     After about six minutes, Ms. Svistina unhooked the back of her dress herself, and resumed massaging Mr. Elbadramany.

47.     Ms. Svistina pushed the blanket further down along Mr. Elbadramany's waistline, and continued the massage.

48.     Ms. Svistina also turned back and looked into the brightly lit camera and again did not request that it be turned off or turned away.

49.     Mr. Elbadramany then turned over and was lying face upwards.

50.     Ms. Svistina did not protest, and encouraged his change in position.

51.     Soon after turning over, Mr. Elbadramany asked Ms. Svistina if she would like to turn on ambient light and music. She said yes. Mr. Elbadramany asked her what color of ambient

light. She said red. Mr. Elbadramany said the commands to the device to turn on red lights, and played soft music.

52.     Mr. Elbadramany was massaged for approximately 36 minutes by Ms. Svistina.

53.     When Ms. Svistina finished massaging Mr. Elbadramany, she requested Mr. Elbadramany massage her, which he did.

54.     Mr. Elbadramany put his top and shorts back on before he massaged her.

55.     Ms. Svistina did not go to any bathroom to change or undress as she kept her short sundress on and just lay on the massage table face down.

56.     Before placing her body face-down on the massage table, she loosened the top of her dress to expose more of her shoulders and back for the massage.

57.     Ms. Svistina lay underneath the brown blanket with her back and shoulders exposed, and the brown blanket covering her from the waist down to her toes.

58.     Ms. Svistina then specifically asked Mr. Elbadramany to massage her hamstring area telling him that her hamstrings had become tight as a result of her activities prior to her arriving at the cabana studio.

59.     After about sixteen minutes, the parties mutually agreed to end the massage.

60.     Ms. Svistina remained very friendly and never complained of or intimated that anything improper had occurred.

61.     She then sat up on the massage table and arranged her dress. She smiled at Mr. Elbadramany and engaged him in pleasant conversation while he was standing near her smiling and talking as well.

62.     He then stored the massage table and pulled down the Murphy bed, he bid her farewell and exited the premises.

#100876027v1

63.     Their total encounter lasted around 76-77 minutes from around 11:05 pm on June 18, to around 12:23 am on June 19, 2021.

*MS. SVISTINA GETS UPSET AND ASKS TO STAY LONGER*

64.     The next morning, Saturday, June 19, 2021 at around 11:25 am, Mr. Elbadramany texted Ms. Svistina good morning and said he hoped she was having a great time. He texted that he had a guest arriving the next day, Sunday, June 20, 2021, and asked her kindly to leave at around 11 am or so.

65.     Ms. Svistina was upset. At around 11:36 am she texted back that he had told her the night before that checkout was on Sunday evening, not Sunday morning. She stated that she had already told her friend to pick her up on Sunday, June 20 in the evening. She asked him why he was telling her different information now, and that her friend would not be able to pick her up Sunday morning. She further texted him that he knew she did not have a car and had many bags.

66.     Ms. Svistina further asked Mr. Elbadramany if he could ask the next guest to wait until she moved out tomorrow evening, June 20. She stated that she did not feel well, could not sleep all night, and was feeling exhausted, and was in bed all day.

67.     At 11:54 am on June 19, 2021, Mr. Elbadramany texted "Ok. He just told me this morning I didn't know. Hope you feel better."

*MS. SVISTINA PUTS INTO MOTION HER PLAN TO MISUSE THE CRIMINAL JUSTICE SYSTEM*

68.     At or around 6:20 pm on June 19, 2021, Ms. Svistina called the Sunny Isles Beach Police.

69.     Before the police arrived on the scene, Ms. Svistina put the Murphy bed back up, and pulled out and set up the massage table and placed oil in the middle of the table.

#100876027v1

70.     Before the police arrived on the scene, Ms. Svistina also grabbed, touched, and tampered with the Eufy security camera, the smoke detector, and took multiple pictures and videos of the cabana.

71.     Ms. Svistina gave a hand-written sworn statement to the police.

72.     The hand-written statement by Ms. Svistina was her account of what transpired. The statement contained false statements and serious omissions. She did not need any help in writing this statement in English.

73.     The police visit resulted in an Investigation/Incident Report dated June 19, 2021 (the "Police Report"). She did not need a translator, nor did she ask for one, when dealing with the police officers.

74.     The Police Report states that the police were dispatched to investigate "hidden cameras located in a room," not "battery" or "unlawful sexual touching."

75.     Her sworn statement is not complete or accurate, and contains demonstrable serious falsehoods.

76.     The Police Report of what Ms. Svisitna told them is also not complete or accurate, contradicts her own handwritten statement and contains falsehoods.

77.     By way of example, Ms. Svistina conveniently forgot to mention the 36-minute massage she gave Mr. Elbadramany, the majority of the brief encounter, when he was lying face-down, and she was a few feet away from the door to the cabana.

78.     By way of example of the lies, Ms. Svistina stated that she was pushed into the bathroom which never happened.

79.     Ms. Svistina's sworn statement also failed to mention that after Mr. Elbadramany left, she could have left, but did not.

#100876027v1

80.     In fact, after their encounter on the night of June 18, 2021, Ms. Svistina demanded to stay until Sunday, June 20, 2021 in the evening, as expressed by text message on June 19 at around 11:36 am, a fact, which she also intentionally did not provide to the police.

81.     Ms. Svistina signed an authorization to search the cabana, when she had no authority to do so.

82.     Ms. Svistina left in the evening/night of June 19, 2021, after the police left.

83.     Before leaving, Ms. Svistina trashed and vandalized the cabana.

84.     Mr. Elbadramany texted Ms. Svistina saying that she had vandalized the cabana and assumed she had stolen the electronic equipment, which apparently was seized by the police.

85.     Mr. Elbadramany reported her trashing and vandalizing the cabana and stolen items to Couchsurfing.

86.     At or around 9:17 pm on June 19, 2021, Ms. Svistina texted Mr. Elbadramany and stated that she left that night and had a fever all day, but that was a lie.

87.     Mr. Elbadramany asked if she was ok, whether she went to urgent care, and whether she was vaccinated. He texted "Hope you feel better soon."

88.     Ms. Svistina texted back that she had a fever all day, she could not sleep, and she got medicine, and was staying with her friend.

89.     At around 10:47 pm, on June 19, 2021, Mr. Elbadramany texted Ms. Svistina "Ok, hope you feel better." And she responded "Thank you !!!"

90.     Based on  Ms. Svisitna's malicious lies to the police and to the State Attorney's office, Mr. Elbadramany was arrested, charged with a misdemeanor count of battery (see DE 15-7), and has spent thousands of dollars to defend himself in the criminal case.

10

91.    Ms. Svistina was interviewed at least twice by two different Assistant State Attorneys.

92.    After those interviews, the State dropped the criminal case against Mr. Elbadramany.

93.    Mr. Elbadramany's criminal charge was dropped by nolle prose with the help of his lawyers, after they presented incontrovertible evidence of the truth to the State.

94.    The criminal case is nothing more than Ms. Svistina's attempt to manipulate and misuse the criminal justice system based on lies, fraud, and deceit.

95.    Ms. Svistina is abusing this country's criminal process as an extortionate vehicle.

## COUNT 1 – MALICIOUS PROSECUTION

96.    Mr. Elbadramany re-alleges and incorporates herein by reference the facts as stated in paragraphs 1-95 above.

97.    Ms. Svistina's criminal complaint to the Sunny Isles Beach Police Department and the State Attorney's Office is based on lies and forms the basis of this malicious prosecution count.

98.    The misdemeanor battery charge was an original criminal judicial proceeding against Mr. Elbadramany that was commenced and continued by Ms. Svistina.

99.    As the complainant, Ms. Svistina was and is the legal cause of the original criminal proceeding against Mr. Elbadramany.

100.    The termination of the criminal case constitutes a bona fide termination of that proceeding in favor of the Mr. Elbadramany.

101.    There was an absence of probable cause for the original proceeding because it was all based on lies, fraud, deceit, and serious omissions propounded by Ms. Svistina.

#100876027v1

102.    There was malice on the part of Ms. Svistina in commencing the criminal proceeding.

103.    Mr. Elbadramany has suffered economic damages in the form of legal fees and costs in connection with the defense of his criminal case.

WHEREFORE, Mr. Elbadramany, Counter-Plaintiff, demands trial by jury, and judgment for fees and costs related to his defense in the State criminal case.

## COUNT 2 – ABUSE OF PROCESS

104.    Mr. Elbadramany re-alleges and incorporates herein by reference the facts as stated in paragraphs 1-103 above.

105.    Ms. Svistina's criminal case against Mr. Elbadramany constitute an illegal, improper, and/or perverted use of the judicial process by her.

106.    Ms. Svistina has an ulterior motive or purpose in exercising the illegal, improper, and/or perverted process.

107.    Upon information and belief, Ms. Svistina wants to exact vengeance against, and publicly embarrass and humiliate, Mr. Elbadramany for not allowing her to stay longer for free at his cabana.

108.    Upon information and belief, Ms. Svistina is engaging in a pattern of abuse of the US criminal justice systems for profit.

109.    Mr. Elbadramany has suffered economic damages in the form of legal fees and costs in connection with the defense of his criminal case.

WHEREFORE, Mr. Elbadramany, Counter-Plaintiff, demands trial by jury and judgment for fees and costs related to his defense in the State criminal case and the civil case commenced by Ms. Svistina against Mr. Elbadramany in this Court.

12

Respectfully submitted,

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: (305) 679-5700
Facsimile: (305) 679-5710

By:     */s/ Edward R. Shohat*
        **Edward R. Shohat**
        Florida Bar No. 152634
        eshohat@joneswalker.com
        **Monique Garcia**
        Florida Bar No. 0085004
        mgarcia@joneswalker.com
        **David S. Weinstein**
        Florida Bar No. 749214
        dweinstein@joneswalker.com
        *Counsel for Defendant Mark*
        *Elbadramany*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 17th day of January, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

                              */s/ Edward R. Shohat*
                              Edward R. Shohat

13

#100876027v1

**SERVICE LIST**:

Raymond R. Dieppa
FLORIDA LEGAL, LLC
12550 Biscayne Blvd., Suite 209
North Miami, FL 33181
Phone: (305) 901-2209
Fax: (786) 870-4030
Email: Ray.Dieppa@floridalegal.law
        fv@floridalegal.law
John P. Kristensen, Pejman Ben-Cohen, Megan Gyongyos
CARPENTER & ZUCKERMAN
8827 W. Olympic Blvd.
Beverly Hills, CA 90211
Phone: (310) 273-1230
Email: kristensen@cz.law
        pej@cz.law
        mgyongyos@cz.law
Counsel for Plaintiff Elena Svistina

Daniel J. Santaniello
Valeria R. Edwards
LUKS, SANTANIELLO, PETRILLO, COHEN & PETERFRIEND
301 Yamato Road, Suite 4150
Boca Raton, FL 33431
Phone: (561) 893-9088
Fax: (561) 893-9048
Email: LUKSBOCA-Pleadings@LS-Law.com
        LUKSMIA-Pleadings@LS-Law.com
        vedwards@insurancedefense.net
        SSimpson@insurancedefense.net
Counsel for TDR Towers Master Association, Inc. and Firstservice Residential Florida, Inc.

ROBERTO M. URETA, ESQ.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
100 Southeast Second Street, Suite 2100
Miami, Florida 33131
Direct Line: (305) 395-5598
Main Line: (305) 374-4400
Facsimile: (305) 579-0261
Email: rob.ureta@wilsonelser.com
        may.llanes@wilsonelser.com
        angie.hayes@wilsonelser.com
Counsel for Defendant, Universal Protection Service, LLC
d/b/a Allied Universal Security Services

14

#100876027v1